Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ALBERTO RIVERA MONROY and IRMA PARRA-RIVERA, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>REAL TIME RESOLUTIONS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and MTC FINANCIAL INC. d/b/a TRUSTEE CORPS,<br><br>Defendants. | Case No. 2:21-cv-00813-BJR<br><br>**DEFENDANT REAL TIME RESOLUTIONS, INC.'S ANSWER AND DEFENSES TO COMPLAINT, AND COUNTERCLAIMS** |

COMES NOW Defendant Real Time Resolutions, Inc. ("RTR") and hereby files its Answer, Defenses, and Counterclaims to the Complaint of Plaintiffs Alberto Rivera Monroy and Irma Parra-Rivera ("Plaintiffs" or alternatively "Plaintiff"), stating as follows:

To the extent Plaintiffs' statements preceding Paragraph 1 of the Complaint are construed as allegations requiring a response, RTR denies that it violated the Fair Debt Collection Practices Act ("FDCPA"), the Washington Consumer Protection Act ("CPA"), the Real Estate Settlement Procedures Act ("RESPA"), or any other provision of federal, state, or common law with respect to Plaintiffs.

## I.      AS TO PARTIES

1.      The allegations in paragraph 1 of the Complaint refer to the land records of King County,

Washington, which are documents that speak for themselves. RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. Answering further, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding where Plaintiffs reside and, on that basis, denies them. RTR denies all allegations, if any, remaining in Paragraph 1.

2.     Admitted.

3.     The allegations in Paragraph 3 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR denies that MERS is the beneficiary of the Deed of Trust under Instrument No. 20070301001246. The Deed of Trust was assigned to RTR under Instrument No. 20200512000681. Answering further, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

4.     The allegations in Paragraph 4 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR admits only that Trustee Corps is the current trustee for the Deed of Trust and has set a foreclosure sale date for October 1, 2021. Answering further, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

5.     To the extent the allegations in Paragraph 5 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them. To the extent the allegations in Paragraph 5 are directed toward RTR, RTR admits only that it has taken steps to effectuate a nonjudicial foreclosure on the Property pursuant to the Deed of Trust and in accordance with all applicable law. The allegations regarding RTR's principal/agent or representative relationship with other parties to this litigation, as well as the allegations regarding whether the Property is Plaintiffs' homestead, are conclusions of law to which no response is required; to the extent a response is required, RTR admits only that Trustee Corps is acting on its behalf but denies the remaining allegations. RTR specifically denies that it is liable to Plaintiffs under any theory articulated in the Complaint, denies all

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 2

allegations, if any, remaining in Paragraph 5, and denies all allegations not expressly admitted.

## II. AS TO JURISDICTION AND VENUE

6.    To the extent the allegations in Paragraph 6 are directed toward entities other than RTR, they require no response. To the extent the allegations are direct towards RTR, the allegations are denied.

7.    To the extent the allegations in Paragraph 7 are directed toward entities other than RTR, they require no response. To the extent the allegations are directed towards RTR, RTR denies the allegations.

8.    The allegations in Paragraph 8 are conclusions of law to which no response is required; to the extent a response is required, RTR admits the allegations for jurisdictional purposes only and denies any remaining allegations, if any, in Paragraph 8.

9.    In response to Paragraph 9, RTR admits only that Plaintiff seeks declaratory relief.  RTR denies that Plaintiff is entitled to declaratory relief, denies all allegations, if any, remaining in Paragraph 9, and denies all allegations not expressly admitted.

10.    The allegations in Paragraph 10 are conclusions of law to which no response is required; to the extent a response is required, RTR denies it committed any unlawful acts.  Answering further, RTR admits venue is proper in this District for this matter.

## III. AS TO FACTUAL ALLEGATIONS

11.    In response to the allegations in Paragraph 11, RTR is without sufficient information to admit or deny whether Plaintiffs acquired two loans at the same time to finance their home in 2007, and whether Plaintiffs are current on the first mortgage, and as such, deny those allegations.  As to the remaining allegations in Paragraph 11, the Deed of Trust recorded under Instrument No. 20070301001245 ("Deed of Trust") and the Substitution of Trustee and Deed of Conveyance ("Reconveyance") are documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.  RTR denies that the document attached to the Complaint as Exhibit A is a true and accurate copy because it is redacted.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 3

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Answering further, RTR denies that Plaintiffs' Deed of Trust was reconveyed by the recording of the Reconveyance as the document plainly provides it was related to a third party rather than Plaintiffs.

12.    In response to Paragraph 12, RTR admits only that it took steps to foreclose on the Property following Plaintiffs' default. Answering further, RTR denies the Deed of Trust was reconveyed. The remaining allegations in Paragraph 12 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. RTR denies all allegations not expressly admitted.

13.    In response to the allegations in Paragraph 13, RTR denies that the Deed of Trust was reconveyed. The remaining allegations in Paragraph 13 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.

14.    The allegations in Paragraph 14 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. RTR also denies that Plaintiffs are named in the Reconveyance.

15.    The allegations in Paragraph 15 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. In further response, whether the alleged reconveyance was "picked up and relied upon by the public" is a conclusion of law to which no response is required; to the extent a response is required, RTR denies the allegations.

16.    In response to Paragraph 16, RTR admits only that it took steps to foreclose on the Property. RTR denies that the Reconveyance appears clearly on the Official Records of King County. The remaining allegations in Paragraph 16 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. RTR denies all allegations not expressly admitted.

17.    The allegations in Paragraph 17 are directed toward entities other than RTR and require no response. To the extent a response is required, RTR admits the beneficiary interest in the Deed of

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 4

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Trust was assigned to it by assignment dated May 12, 2020 ("Assignment").  RTR denies that the Deed of Trust was reconveyed 11 years prior. In further response, the allegations in Paragraph 17 refer to documents that speak for themselves; RTR denies all remaining allegations or characterizations inconsistent with true and accurate copies of such documents.

18.     In response to the allegations in Paragraph 18, that the allegations refer to documents that speak for themselves; RTR denies all remaining allegations or characterizations inconsistent with true and accurate copies of such documents.

19.     The allegations in Paragraph 19 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.

20.     The allegations in Paragraph 20 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.

21.     In response to Paragraph 21, RTR denies the Deed of Trust was reconveyed. The Reconveyance was in regard to original trustor "Meagan Evans" and not Plaintiffs. RTR denies that it failed to investigate the matter in the available land records.  Answering further, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the conduct of a "third-party" and, on that basis, denies them.  RTR denies all allegations, if any, remaining in Paragraph 21.

22.     The allegations in Paragraph 22 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

23.     In response to Paragraph 23, RTR denies that the Deed of Trust was reconveyed. Answering further, RTR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 and, on that basis, denies them.  RTR denies all allegations, if any, remaining in Paragraph 23.

## IV. AS TO CAUSES OF ACTION

## CLAIM ONE: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

24.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

25.     In response to Paragraph 25, RTR admits only that it was not the original loan servicer and that Plaintiffs defaulted on the loan as of June 1, 2009.  The allegations that RTR is a "debt collector" are conclusions of law to which no response is required; to the extent a response is required, RTR denies the allegations.  The remaining allegations in Paragraph 25 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.  RTR denies all allegations, if any, remaining in Paragraph 25 and denies all allegations not expressly admitted.

26.     In response to Paragraph 26, RTR admits only that it referred the Property to Trustee Corps for the purposes of nonjudicial foreclosure.  The allegations in Paragraph 26 regarding the application of the text of the FDCPA are conclusions of law to which no response is required; to the extent a response is required, RTR denies the allegations.  The remaining allegations in Paragraph 26 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.  RTR denies all allegations, if any, remaining in Paragraph 26 and denies all allegations not expressly admitted.

27.     In response to Paragraph 27, RTR denies the lien was extinguished by the reconveyance in 2009 and denies the security interest is unenforceable. Answering further, RTR admits only that it referred the Property to Trustee Corps for the purposes of nonjudicial foreclosure.  RTR denies all allegations remaining in Paragraph 27 not expressly admitted.

28.     RTR denies all allegations in Paragraph 28.

29.     RTR denies all allegations in Paragraph 29.  RTR specifically denies that Plaintiff suffered the damages alleged or any damages whatsoever.

30.     The allegations in Paragraph 30 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 6

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

31.     The allegations in Paragraph 31 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them. Answering further, RTR denies the Deed of Trust was extinguished.

32.     The allegations in Paragraph 32 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

**CLAIM TWO: VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT**

33.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

34.     The allegations in Paragraph 34 purport to offer statements of law based on statutes that are documents in writing that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.

35.     In response to the allegations in Paragraph 35, RTR denies that it failed to perform a reasonable investigation.  The Reconveyance does not reference Plaintiffs but a third-party to the Deed of Trust. RTR denies the Property was reconveyed or that the subject loan was satisfied.  The remaining allegations in Paragraph 35 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.

36.     RTR denies the allegations in Paragraph 36.

**CLAIM THREE: VIOLATION OF DEED OF TRUST ACT**

37.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

38.     To the extent the allegations in Paragraph 38 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent the allegations in Paragraph 38 are directed toward RTR, RTR specifically denies that it violated the

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Deed of Trust Act. The allegations in Paragraph 38 regarding whether the Property was reconveyed or the application of RCW 61.24.110 *et seq.* are conclusions of law to which no response is required; to the extent a response is required, RTR denies the allegations. The remaining allegations in Paragraph 38 refer to documents that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents. RTR denies all allegations, if any, remaining in Paragraph 38.

39.     The allegations in Paragraph 39 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

40.     To the extent the allegations in Paragraph 40 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them. To the extent the allegations in Paragraph 40 are directed toward RTR, RTR admits only that it referred the Property to Trustee Corps for nonjudicial foreclosure. RTR denies that it violated the Deed of Trust Act with respect to Plaintiffs or the Property. RTR denies that Plaintiffs suffered the damages alleged, or any damages whatsoever, due to any act or omission of RTR. RTR denies all allegations, if any, remaining in Paragraph 40 and denies all allegations not expressly admitted.

### CLAIM FOUR: DECLARATORY JUDGMENT

41.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

42.     In response to the allegations in Paragraph 42, RTR denies the Deed of Trust was reconveyed in 2009 and that the security interest was eliminated. Answering further, regarding whether the Reconveyance was relied upon by any party, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them. RTR denies all allegations, if any, remaining in Paragraph 42.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 8

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

43.     To the extent the allegations in Paragraph 43 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent the allegations in Paragraph 43 are directed toward RTR, RTR denies the Deed of Trust was reconveyed and that it is "valid and enforceable" as alleged. Answering further, RTR denies all allegations, if any, remaining in Paragraph 43.

44.     To the extent the allegations in Paragraph 44 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent the allegations in Paragraph 44 are directed toward RTR, RTR denies the allegations.

45.     To the extent the allegations in Paragraph 45 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent the allegations in Paragraph 45 are directed toward RTR, RTR denies the allegations.

**CLAIM FIVE: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

46.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

47.     The allegations in Paragraph 47 are conclusions of law to which no response is required; to the extent a response is required, RTR denies the allegations to the extent they may misstate the law.

48.     The allegations in Paragraph 48 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

49.     The allegations in Paragraph 49 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

50.     In response to Paragraph 50, RTR admits only that its activities as a mortgage servicer go beyond the borders of the state of Washington, that it caused certain documents to be created, and that it took steps to effect the nonjudicial foreclosure of the Property.  RTR denies that it failed to conduct a reasonable investigation of the facts of such foreclosure, and denies that it pursued an unlawful foreclosure.  RTR denies that the Deed of Trust was reconveyed. RTR denies all allegations, if any, remaining in Paragraph 50 and denies all allegations not expressly admitted.

51.     In response to Paragraph 51, RTR denies that it committed any unfair or deceptive acts toward Plaintiffs.  To the extent the allegations in Paragraph 51 refer to documents that speak for themselves, RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents.  Answering further, the allegations in Paragraph 51 regarding whether the alleged reconveyance could be located readily are conclusions of law to which no response is required; to the extent a response is required, RTR denies the allegations.  RTR denies all allegations, if any, remaining in Paragraph 51.

52.     The allegations in Paragraph 52 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

53.     The allegations in Paragraph 53 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

54.     To the extent the allegations in Paragraph 54 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent the allegations in Paragraph 54 are directed toward RTR, RTR denies the allegations.

55.     To the extent the allegations in Paragraph 55 are directed toward entities other than RTR, they require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  To the extent

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 10

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1    the allegations in Paragraph 55 are directed toward RTR, RTR denies the allegations.  RTR specifically

2    denies that Plaintiffs suffered the damages alleged or any damages whatsoever.

3                           **CLAIM SIX: NEGLIGENT MISREPRESENTATION**

4            56.    RTR repeats and realleges and incorporates by reference its responses to the foregoing

5    paragraphs.

6            57.    The allegations in Paragraph 57 are conclusions of law to which no response is required;

7    to the extent a response is required, RTR denies the allegations to the extent they may misstate the law.

8            58.    The allegations in Paragraph 58 are directed toward entities other than RTR and require

9    no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form

10   a belief as to the truth of the allegations and, on that basis, denies them.

11           59.    The allegations in Paragraph 59 are directed toward entities other than RTR and require

12   no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form

13   a belief as to the truth of the allegations and, on that basis, denies them.

14           60.    The allegations in Paragraph 60 are directed toward entities other than RTR and require

15   no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form

16   a belief as to the truth of the allegations and, on that basis, denies them.

17           61.    The allegations in Paragraph 61 are directed toward entities other than RTR and require

18   no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form

19   a belief as to the truth of the allegations and, on that basis, denies them.

20           62.    In response to Paragraph 62, RTR admits only that it is the beneficiary under the Deed

21   of Trust, and also a mortgage loan servicer for which it may receive compensation for its services.  The

22   remaining allegations regarding RTR's duties are conclusions of law to which no response is required;

23   to the extent a response is required, RTR denies the remaining allegations.

24           63.    In response to the allegations in Paragraph 63, RTR denies the Deed of Trust was

25   reconveyed in 2009. Answering further, the remaining allegations in Paragraph 63 refer to documents

26

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 11

that speak for themselves; RTR denies all allegations or characterizations inconsistent with true and accurate copies of such documents, and denies that it made any negligent misrepresentations.

64.     RTR denies the allegations in Paragraph 64.

65.     The allegations in Paragraph 65 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

66.     The allegations in Paragraph 66 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

67.     The allegations in Paragraph 67 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

**CLAIM SEVEN: NEGLIGENCE**

68.     RTR repeats and realleges and incorporates by reference its responses to the foregoing paragraphs.

69.     The allegations in Paragraph 69 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  In further response, to the extent the allegations in Paragraph 69 are conclusions of law, they require no response; to the extent a response is required, RTR denies the allegations.

70.     The allegations in Paragraph 70 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

71.     In response to Paragraph 71, RTR admits only that it is a mortgage loan servicer and was not the original servicer on the subject loan.  RTR denies all allegations remaining in Paragraph 71 and denies all allegations not expressly admitted.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 12

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

72.   RTR denies the allegations in Paragraph 72.

73.   RTR denies the allegations in Paragraph 73.

74.   The allegations in Paragraph 74 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

75.   The allegations in Paragraph 75 are directed toward entities other than RTR and require no response; to the extent a response is required, RTR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

### V. AS TO PRAYER FOR RELIEF

In response to the Prayer for Relief following Paragraph 75, RTR denies the allegations set forth herein and in all of its subparts, denies that it violated any provision of federal, state, or common law with respect to Plaintiff, denies that Plaintiff suffered any damages attributable to any act or omission of RTR, and denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

### GENERAL DENIAL

To the extent that RTR has not responded in full to any other allegation in the Complaint, that allegation is denied. Each allegation not specifically admitted is specifically denied.

### AFFIRMATIVE DEFENSES

RTR hereby sets forth the following separate and distinct defenses and affirmative defenses without conceding that RTR bears the burden of proof or persuasion.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim against RTR upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against RTR fail because all allegedly unlawful conduct Plaintiffs attribute to RTR in the Complaint are the direct result of the mistake(s) of a third party.  Specifically, the alleged 2009 Reconveyance is defective as to Plaintiffs' Deed of Trust due to a scrivener's error. The

ANSWER, DEFENSES, AND COUNTERCLAIMS OF REAL TIME RESOLUTIONS, INC. – PAGE 13

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1  Reconveyance was plainly meant to reconvey an unrelated deed of trust, as evidenced by the inclusion
2  of another original trustor's name and other lender identified in the document, rather than Plaintiffs.

3  ### THIRD AFFIRMATIVE DEFENSE

4  To the extent that Plaintiffs are entitled to any recovery in this matter, which is denied, the
5  recovery should be set off against the amounts Plaintiffs owe to RTR on the underlying mortgage loan.

6  ### FOURTH AFFIRMATIVE DEFENSE

7  The Complaint fails to state a cause of action or sufficient facts necessary to give rise to a claim
8  for punitive or treble damages.

9  ### FIFTH AFFIRMATIVE DEFENSE

10  Plaintiffs' prayer for punitive or treble damages violates RTR's rights under the United States
11  Constitution, including the Fifth, Sixth and Fourteenth Amendments.

12  ### SIXTH AFFIRMATIVE DEFENSE

13  To the extent Plaintiffs have experienced any actual damages, which RTR denies, such
14  damages were the result of a superseding and/or intervening cause for which RTR is not legally
15  responsible.

16  ### SEVENTH AFFIRMATIVE DEFENSE

17  While RTR denies any liability in this matter, any alleged acts or omissions by RTR that might
18  give rise to the claims alleged in the Complaint are the result of an innocent mistake and/or bona fide
19  error despite reasonable procedures implemented by RTR, which at all times acted in good faith and in
20  accordance with reasonable commercial standards so as to preclude any recovery by Plaintiffs against
21  RTR.

22  ### EIGHTH AFFIRMATIVE DEFENSE

23  To the extent that Plaintiffs may have suffered or will suffer any damages as alleged in the
24  Complaint, which RTR denies, such damages have been and will be proximately caused, in whole or in
25  part, by the acts or omissions of persons or entities other than RTR, over whom RTR at relevant times
26  had no control and for whose conduct RTR is not responsible.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 14

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs failed to take proper and reasonable steps to avoid, minimize or mitigate their alleged damages and, to the extent of such failure, the damages allegedly incurred by Plaintiffs, if any, should be reduced accordingly or eliminated entirely.

### TENTH AFFIRMATIVE DEFENSE

Any loss, injury, damage or detriment Plaintiffs may have suffered was directly and proximately caused and contributed to by their own breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct and not by RTR.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands and estoppel.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs did not incur any damages or loss as a result of any act or conduct by RTR. Any damage or loss Plaintiffs did incur as a result of any act or conduct by RTR would be speculative at best and thus too uncertain for recovery.

### THIRTEENTH AFFIRMATIVE DEFENSE

The conduct Plaintiff attributes to RTR in the Complaint is inconsistent with the types of conduct regulated in the Washington Consumer Protection Act, including (but not limited to) because any alleged failure to discern the legal status of the Property based on a good-faith investigation of the publicly-available information cannot be an "unfair or deceptive act or practice."

### RESERVATION OF RIGHTS

RTR's investigation of this matter is ongoing. RTR reserves the right to amend its Answer and Defenses, in whole or in part, by adding additional affirmative defenses, counterclaims, cross-claims, or third-party claims as warranted by further discovery.

WHEREFORE, Defendant Real Time Resolutions, Inc. respectfully requests that this Court deny Plaintiffs the relief sought and enter judgment in RTR's favor; award RTR its attorneys' fees and costs

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 15

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

for having to defend itself against this lawsuit; and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Real Time Resolutions, Inc. ("RTR") incorporates by reference its admissions, denials, and responses to the foregoing paragraphs as if set forth herein, and herein alleges:

### Parties

1.     RTR is a Texas corporation registered to conduct business in Washington.  RTR's primary office is located in Dallas, Texas.

2.     Plaintiffs, Alberto Rivera Monroy and Irma Parra-Rivera ("Plaintiffs") are individuals that, on information and belief, reside at 23829 SE 248th Street, Maple Valley, WA 98038.

### Jurisdiction and Venue

3.     This Court has jurisdiction over this action pursuant to supplemental jurisdiction for state law claims pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because it is where the subject property is located.

### Factual Allegations

### The Second Mortgage Loan

5.     On or about February 27, 2007, Plaintiff Alberto Rivera Monroy executed a note in favor of Liberty Financial Group, Inc. ("Liberty") in the amount of $79,600 ("Note"). A copy of the Note is attached hereto as **Exhibit A**.

6.     Also on or about February 27, 2007, to secure repayment of the Note, Plaintiffs executed a deed of trust ("Deed of Trust") (collectively with the Note, the "Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Liberty, which was secured by the property described as:

> LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE
> PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S)

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1   77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON.
    SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.
2   A.P.N.: 070571-0570-02

3   and otherwise known as 23829 SE 248th Street, Maple Valley, Washington 9038 ("Property").

4       7.      The Deed of Trust was recorded in the official records of King County, Washington,

5   under Instrument No. 20070301001246.  A copy is attached hereto as **Exhibit B**.

6       8.      The Deed of Trust contained a MIN number of 100237600000820753 to identify the

7   document in MERS' records.

8       9.      The Note and Deed of Trust were granted by Plaintiffs as a second mortgage loan on the

9   Property.

10                          **The Unrelated Reconveyance**

11      10.     On June 3, 2009, a third-party caused a document titled Substitution of Trustee and Deed

12  of Conveyance to be recorded in the official records of King County, Washington, under Instrument

13  No. 20090603001231 ("Reconveyance"). A copy is attached hereto as **Exhibit C.**

14      11.     Upon information and belief, the Reconveyance was intended to be recorded regarding

15  a deed of trust entirely unrelated to Plaintiffs.

16      12.     The Reconveyance does not mention Plaintiffs by name anywhere in the recorded

17  document.

18      13.     Rather, the Reconveyance names the original trustor as Meagan Evans, not Plaintiffs.

19      14.     The Reconveyance states the subject deed of trust was recorded on "02/24/2004."

20      15.     The "02/24/2004" recording date does not match the recording date for Plaintiffs' Deed

21  of Trust.

22      16.     The substitution of trustee portion of the Reconveyance was executed on behalf of

23  "Neighborhood Mortgage Inc."

24      17.     Neighborhood Mortgage Inc. was not the lender on Plaintiffs' Deed of Trust.

25      18.     The Reconveyance, on page 2, references a MIN number of 100052599990601490.

26

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 17

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

19.     MIN number 100052599990601490 is not the MIN number on Plaintiffs' Deed of Trust.

20.     Upon information and belief, the drafter of the Reconveyance committed a scrivener's error when entering "Doc No: 20070301001246" into the document.

21.     Instrument No. 20070301001246 is the recording information for Plaintiffs' Deed of Trust, not for Meagan Evans' deed of trust, which was intended to be the subject of the document.

22.     The Instrument No. for Megan Evans' deed of trust is 20040301001246 ("Evans DOT"). A copy of the Evans DOT is attached as **Exhibit D.**

23.     A comparison of the two recording numbers from the Deed of Trust and the Evans DOT indicates just one number was entered incorrectly by the drafter of the Reconveyance:

20070301001246  (Plaintiffs' Deed of Trust)

20040301001246  (Evans DOT)

24.     Moreover, the MIN number the Evans DOT, 100052599990601490, matches the MIN number on the Reconveyance document.

25.     Based upon the entirety of the information contained in the Reconveyance document, the Reconveyance was clearly not intended to affect Plaintiffs' Deed of Trust.

26.     RTR has searched the servicing records for Plaintiffs' Loan and nothing indicates that a reconveyance of the Deed of Trust was to have been filed in 2009, nor was it requested by the prior servicer or beneficiary.

27.     As of June 3, 2009, Plaintiffs had not paid off or otherwise refinanced the indebtedness due on the Loan to fully satisfy the indebtedness and a reconveyance would not have been proper for Plaintiffs' Loan.

**Plaintiffs' Unequitable Reliance on the Reconveyance**

28.     In or around June 2009, Plaintiffs defaulted on their payments due under the Note and Deed of Trust.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 18

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

29.     On May 12, 2020, an assignment of deed of trust was recorded in the records of King County as Instrument No. 202005120068, which assigned the beneficial interest in the Deed of Trust to RTR ("Assignment").  A copy of the Assignment is attached hereto as **Exhibit E**.

30.     RTR is in possession of Note, which is indorsed in blank, and therefore possess the right to enforce the Note.

31.     While Plaintiffs did tender payments on the Loan after the Reconveyance was filed, Plaintiffs have not paid off or otherwise refinanced the indebtedness due to RTR under the Loan.

32.     There remains an outstanding payoff balance $203,479.37 due to RTR on the Loan.

33.     After the Assignment was recorded, Plaintiffs advised RTR that they believe they do not owe the debt any longer and that the Deed of Trust had been reconveyed.

34.     Plaintiffs challenge RTR's right to enforce and foreclose on the Deed of Trust based solely on the Reconveyance that doesn't not even name them in the document.

35.     RTR had no prior knowledge of the incorrect Reconveyance prior to Plaintiffs disputing the validity of the Deed of Trust.

36.     Moreover, RTR did investigate King County's public records and confirmed the Deed of Trust is still of record. A copy of a title insurance guarantee obtained in 2019, after the Reconveyance, is attached hereto as **Exhibit F.**  Page 6 of the guarantee evidences the Deed of Trust still is of record in King County's public records.

37.     Based on the servicing records reviewed by RTR, the prior beneficiary of the Deed of Trust did not authorize any reconveyance nor did it receive any notice of the alleged reconveyance in 2009.  As such, the alleged reconveyance would be ineffective.

38.     Plaintiffs have filed the instant action to seek to enjoin RTR from enforcing the Deed of Trust and to prevent RTR from collecting the balance associated therewith. Granting the relief Plaintiffs seek would unfairly provide them with a windfall due to the apparent mistake of an unrelated third party.

39.     The current payoff balance on Plaintiffs' Loan with RTR is $203,479.37.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 19

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

**First Cause of Action:  Declaratory Relief Rescission of Recorded Reconveyance**

40.     RTR incorporates by references its allegations in the foregoing paragraphs as if set forth herein.

41.     The Declaratory Judgment Act authorizes a court to issue a judgment declaring rights, status, or other legal relations.

42.     RTR seeks a declaration that the Reconveyance did not extinguish the Deed of Trust of RTR.

43.     RTR asks that the Court declare the Reconveyance void  and of no effect as to Plaintiffs' Deed of Trust, Instrument No. 20070301001246.

**Second Cause of Action:  Rescission of the Recorded Reconveyance**

44.     RTR incorporates by references its allegations in the foregoing paragraphs as if set forth herein.

45.     As an alternative to the declaratory relief sought, should the court find the Deed of Trust was released, RTR seeks a rescission of the Reconveyance, Instrument No. 20090603001231, that was intended to reconvey the Evans DOT but mistakenly included the Instrument No. for Plaintiffs' Deed of Trust.

46.     RTR asks that the Court declare the Reconveyance void and of no effect as to Plaintiffs' Deed of Trust, Instrument No. 20070301001246.

**Third Cause of Action:  Reinstatement of Deed of Trust**

47.     RTR incorporates by references its allegations in the foregoing paragraphs as if set forth herein.

48.     As a correlative to the rescission of the Reconveyance, a reinstatement of the Deed of Trust must follow.

49.     To the extent it may have been extinguished, the Deed of Trust should be declared reinstated to its original security position.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 20

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

50.     It is necessary and appropriate that a judicial declaration be issued by this Court in order that the parties may resume their respective rights, duties and interests as to the Deed of Trust.

51.     It is further necessary and appropriate for a judicial declaration declaring that all right, title, and interest held in the Property prior to the Reconveyance be returned to the same type, priority, and position enjoyed in and on the Property as if the Reconveyance never was filed.

**Fourth Cause of Action:  Request for Equitable Lien**

52.     RTR incorporates by references its allegations in the foregoing paragraphs as if set forth herein.

53.     Alternatively, to the extent this Court determines the Deed of Trust to have been extinguished by the incorrect Reconveyance and/or that this Court lacks the power to reinstate the Deed of Trust, which is denied, RTR prays this Court create an equitable lien to protect RTR from inequitable loss.

54.     If the Court determines it can't reinstate the Deed of Trust, RTR has no remedy at law to restore the security interest and equity demands that a lien be created. *Sorenson v. Pyeatt, et al.,* 158 Wash.2d 523, 530 n. 9, 146 P.3d 1172, 1175 n. 9 (2006).

55.     Plaintiffs intended to grant a security interest in connection with the Note as a second mortgage on the Property, and the creation of an equitable lien will simply effectuate the Plaintiffs' intent.

56.     If this Court is unwilling to reinstate the Deed of Trust, an equitable lien is necessary to prevent injustice. *Sorenson v. Pyeatt, et al.,* 158 Wash.2d 523, 530 n. 9, 146 P.3d 1172, 1175 n. 9 (2006).

57.     Plaintiffs have not satisfied the underlying indebtedness on the Loan and they seek an inequitable windfall via the defective Reconveyance.  The Court should create an equitable lien to prevent the injustice.

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 21

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

58.     If this Court determines that the Deed of Trust has been extinguished and Plaintiffs do not owe the remaining balance, RTR has suffered damages in the amount of $203,479.37, which may continue to accrue as interest and others fees accumulate pursuant to the subject loan documentation. .

### **PRAYER**

WHEREFORE, RTR prays that:

1)   Plaintiffs' Complaint be dismissed with prejudice and all costs be taxed against Plaintiff;

2)   That RTR be dismissed as a party to this action;

3)   Judgment in favor of RTR under the First and Second Causes of Action alleged in the Counterclaim declaring the Deed of Trust reinstated, or alternatively, that RTR shall be awarded an equitable lien on the Property in the amount necessary to pay off the DOT, which is $203,479.37, and which will continue to accrue during the pendency of this proceeding;

4)   Reasonable attorney fees and costs pursuant to Deed of Trust;

5)   That RTR be deemed the prevailing party in this action and recover its costs pursuant to Fed. R. Civ. P. 54(d); and

DATED THIS 20th day of August, 2021.

HOLLAND & KNIGHT LLP


*s/ Nellie Q. Barnard*
Nellie Q. Barnard, WSBA No. 50587
E-mail:  nellie.barnard@hklaw.com
601 S.W. Second Ave., Suite 1800
Portland, OR 97204
Telephone:  503.243.2300/Fax:  503.241.8014

*Attorneys for Real Time Resolutions, Inc.*

ANSWER, DEFENSES, AND
COUNTERCLAIMS OF REAL TIME
RESOLUTIONS, INC. – PAGE 22

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

# Exhibit A

THE TERMS OF THIS LOAN CONTAIN PROVISIONS WHICH MAY REQUIRE A
BALLOON PAYMENT AT MATURITY

MIN:                        0753                                   Loan Number·          0718

# NOTE

FEBRUARY 27, 2007                             BELLEVUE              WASHINGTON
Date                                          City                 State


23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038
Property Address                    City              State          Zip Code

## 1   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S $ 79,600.00        (this amount will
be called "principal"), plus interest, to the order of the Lender  The Lender is   LIBERTY FINANCIAL
GROUP, INC, A WASHINGTON CORPORATION
I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note will be called the "Note Holder "

## 2   INTEREST

I will pay interest at a yearly rate of        12.250 %
Interest will be charged on unpaid principal until the full amount of principal has been paid

## 3   PAYMENTS

I will pay principal and interest by making payments each month of U S $  834.13
I will make my payments on the  1st  day of each month beginning on  APRIL 1, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges,
described below, that I may owe under this Note  If, on MARCH 1, 2022         , I still owe amounts
under this Note, I will pay all those amounts, in full, on that date
I will make my monthly payments at   950 IRON POINT ROAD SUITE 240, FOLSOM,
CALIFORNIA 95630

or at a different place if required by the Note Holder

## 4   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of  10
calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be
5.000 % of my overdue payment, but not less than U S $ N/A              and not more than
U S $ N/A                I will pay this late charge only once on any late payment

### (B)  Default

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in
default

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as
described below, the Note Holder will still have the right to do so if I am in default at a later time

### (C)  Notice From Note Holder

If I am in default, the Note Holder may send me a written notice telling me that, if I do not pay the overdue
amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has
not been paid and all the interest that I owe on that amount  That date must be at least 10 days after the date on which
the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me

---

DocMagic eForms  800 649 1362
www docmagic com

**(D)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law   Those expenses include, for example, reasonable attorneys' fees

## 5    THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated FEBRUARY 27, 2007          , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note   That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note

## 6    BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due   A payment of principal only is known as a "prepayment "  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so   A prepayment of all of the unpaid principal is known as a "full prepayment "  A prepayment of only part of the unpaid principal is known as a "partial prepayment "

I may make a full prepayment or a partial prepayment without paying any penalty   The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note   If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes   I may make a full prepayment at any time   If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due   The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments

## 7    BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things   Those things are   (A) to demand payment of amounts due (known as "presentment"), (B) to give notice that amounts due have not been paid (known as "notice of dishonor"), (C) to obtain an official certification of nonpayment (known as a "protest")   Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights   These persons are known as "guarantors, sureties and endorsers "

## 8    GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above   A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above   A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address

## 9    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note   Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things   The Note Holder may enforce its rights under this Note against each of us individually or against all of us together   This means that any one of us may be required to pay all of the amounts owed under this Note   Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note   Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note

---

DocMagic *eForms*   800 649 1362
*www.docmagic.com*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
ALBERTO RIVERA MONROY         -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

DocMagic eForms 800 649 1362
www.docmagic.com

MIN [redacted] 0753                    Loan Number: [redacted] 0718

# BALLOON NOTE ADDENDUM
# SECOND MORTGAGE

This Balloon Note Addendum is made this 27th day of FEBRUARY, 2007 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION

(the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at

23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

(the "Property")

**Additional Covenants** Notwithstanding anything to the contrary set forth in the Note, Borrower and Lender further covenant and agree as follows

**THIS LOAN IS PAYABLE IN FULL AT MATURITY   YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE   LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME   YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY   IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER**

If, on MARCH 1, 2022 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

All other provisions of the Note are unchanged and remain in full force and effect

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
ALBERTO RIVERA MONROY   -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower

**ALLONGE**

LOAN # ███0718

**Borrower(s)** ALBERTO RIVERA MONROY

**Property Address** 23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

**Principal Balance** $79,600.00

**Loan Date** FEBRUARY 27, 2007

**PAY TO THE ORDER OF**

**Lehman Brothers Bank, FSB**

**Without Recourse**

Company Name  LIBERTY FINANCIAL GROUP, INC

By _____          assistant secret

(Name)                                                    (Title)

KORI McKINNEY                              ASSISTANT SECRETARY

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By _____
E Todd Whittemore
Vice President

PAY TO THE ORDER OF
Lehman Brothers Bank, FSB
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC
BY _____
PAUL E. SVEEN
AUTHORIZED SIGNATORY

Pay To The Order Of
Without Recourse
Lehman Brothers Bank, FSB
By _____
Leo C. Trautman, Jr.
Vice President

Multistate Note Allonge

A lst c

Exhibit B

After Recording Return To:
LIBERTY FINANCIAL GROUP, INC
205 108TH AVENUE NE #270, POST CLOSING
BELLEVUE, WASHINGTON 98004
Loan Number: 11120718



200703010001246
FIRST AMERICAN DT          45.00
PAGE001 OF 013
03/01/2007 13:22
KING COUNTY, WA

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** 100237600000820753

13/$45

Grantor(s) (Last name first, then first name and initials):
1. MONROY, ALBERTO RIVERA
2. PARRA-RIVERA, IRMA
3.
4.
5.
6.

FIRST AMERICAN 937269

☐ Additional names on page        of document.

Grantee(s) (Last name first, then first name and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS)
2.
3.
4.
5.
6.

☐ Additional names on page        of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):
LOT 57, BELMONT WOODS DIV. II, VOL. 172, P. 77-85.

Full legal description on page   2   of document.

Assessor's Property Tax Parcel(s) or Account Number(s): 070571-0570-02

Reference Number(s) Assigned or Released:

☐ Additional references on page        of document.

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 1 of 9          DocMagic *eForms* 800-649-1362
                                                              www.docmagic.com

THIS DEED OF TRUST is made this 27th day of FEBRUARY  2007          , among
the Grantor,  ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA,
HUSBAND AND WIFE

(herein "Borrower"),
FIRST AMERICAN TITLE INSURANCE COMPANY 2101 FOURTH AVE
SUITE 800, SEATTLE, WASHINGTON 98121          (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns).  MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
tel. (888) 679-MERS.
LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
is organized and existing under the laws of WASHINGTON          and has an address of
205 108TH AVENUE NE, #270, BELLEVUE, WASHINGTON 98004

(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the County of  KING          , State of Washington:
LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT
THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH
85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE
COUNTY OF KING, STATE OF WASHINGTON.
A.P.N.: 070571-0570-02

THIS SECURITY INSTRUMENT IS SECOND AND SUBORDINATE TO A
FIRST LIEN RECORDING CONCURRENTLY.
which has the address of 23829 SE 248TH STREET

[Street]
MAPLE VALLEY          , Washington    98038          (herein "Property Address");
[City]                                [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to
collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered
by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this
Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."  Borrower understands and
agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust;  but, if
necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and
assigns), has the right:  to exercise any or all of those interests, including, but not limited to, the right to
foreclose and sell the Property; and to take any action required of Lender including, but not limited to,
releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated FEBRUARY 27, 2007 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 79,600.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MARCH 1, 2022 ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS                Page 3 of 9                DocMagic *eForms* 800-649-1362
                                                                         www.docmagic.com

or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3.   **Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4.   **Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5.   **Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.   **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold.  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.   **Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.  If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof.  Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS                    Page 4 of 9                    *DocMagic eForms* 800-649-1362
                                                                                  www.docmagic.com

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to

Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.  **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17.  **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of (i) the right to reinstate after acceleration, (ii) the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure, and (iii) any other matters required to be included in such notice by applicable law. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the lapse of such time as may be required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of the Property for a period or periods not exceeding a total of 30 days by public announcement at the time and place fixed in the notice of sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto, or to the Clerk of the Superior Court of the County in which the sale took place.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the tenth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would then be due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continued unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**21. Substitute Trustee.** In accordance with applicable law, Lender may, from time to time, appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Use of Property.** The Property is not used principally for agricultural or farming purposes.

**23. The following Riders are to be executed by Borrower.** [check box as applicable:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☒ Balloon Rider     ☒ Planned Unit Development Rider     ☐ Other(s) [specify]
☐ 1-4 Family Rider     ☐ Biweekly Payment Rider

DocMagic *eForms* 800-649-1362
www.docmagic.com

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 8 of this Deed of Trust.

_____ (Seal)
ALBERTO RIVERA MONROY  -Borrower

_____ (Seal)
IRMA PARRA-RIVERA  -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Witness:

Witness:

_____

_____

State of Washington                     )
County of KING                         )

      On this day personally appeared before me   ALBERTO RIVERA MONROY  AND  IRMA
PARRA-RIVERA

                                            , to me known to be the individual or
individuals described in and who executed the within and foregoing instrument, and acknowledged that
he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein
mentioned.
      Given under my hand and official seal this _28_ day _February 2007_

_____
Notary Public in and for the State of Washington,
residing at: _Ravensdale._

My commission expires: _2/11/10_

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS         Page 9 of 9         DocMagic eForms  800-649-1362
www.docmagic.com

Loan Number: 0718

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     27th     day of
FEBRUARY, 2007                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to   LIBERTY
FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions
(the "Declaration"). The Property is a part of a planned unit development known as:

BELMONT WOODS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires,
including fire and hazards included within the term "extended coverage," then:

          (i) Lender waives the provision in the Uniform Covenant 2 for the monthly payment to Lender
             of one-twelfth of the yearly premium installments for hazard insurance on the Property; and
          (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on
             the Property is deemed satisfied to the extent that the required coverage is provided by the
             Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage
provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following
a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are

---

MULTISTATE PUD RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3150  9/90                                    Page 1 of 3

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

hereby assigned and shall be paid to Lender.  Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

     **C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

     **D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

     **E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

          (i)    the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

          (ii)   any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

          (iii)  termination of professional management and assumption of self-management of the Owners Association; or

          (iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

     **F.  Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3150  9/90               Page 2 of 3               *DocMagic eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.


_____ (Seal)          *RIVERA PARRA IRMA*  _____ (Seal)
ALBERTO  RIVERA  MONROY  -Borrower                IRMA  PARRA-RIVERA              -Borrower


_____ (Seal)                                     _____ (Seal)
                        -Borrower                                                                  -Borrower


_____ (Seal)                                     _____ (Seal)
                        -Borrower                                                                  -Borrower


MULTISTATE PUD RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3150  9/90                                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

MIN: 100237600000820753     Loan Number: 0718

# BALLOON RIDER
# SECOND MORTGAGE

This Balloon Rider is made this  27th  day of FEBRUARY, 2007          and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at 23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
ALBERTO RIVERA MONROY -Borrower          IRMA PARRA-RIVERA     -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower


BALLOON RIDER SECOND MORTGAGE
FORM 651 10/21/04

DocMagic *eForms* 800-649-1362
www.docmagic.com

Exhibit C

Return to:
Central Mortgage Company
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



**2009060300231**
NATIONWIDE TII AST
PAGE001 OF 002          57.00
06/03/2009 12:11
KING COUNTY, WA

Loan#: 0999906014

## SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

**WHEREAS, MEAGAN EVANS** was the original Trustor, **JOAN H ANDERSON** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 02/24/2004 in KING County, Washington, under Doc No: 20070301001246 or Book page ;   WHEREAS, the undersigned Beneficiary is the present Beneficiary under said Deed of Trust and WHEREAS, the undersigned desires to substitute a new Trustee under Deed of Trust in place and stead of said original Trustee thereunder.

NOW, THEREFORE, the undersigned hereby substitutes **NATIONWIDE TITLE CLEARING, INC.**, a Washington State corporation, as Trustee under said Deed of Trust.

**Dated: 04/23/2009**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR NEIGHBORHOOD MORTGAGE INC

BY: _____
    **CRYSTAL MOORE      VICE PRESIDENT**

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, a Notary Public, in and for said State and County aforesaid, personally appeared CRYSTAL MOORE with whom I am personally acquainted, and who, upon oath, acknowledged him/herself to be the VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR NEIGHBORHOOD MORTGAGE INC the within barginor, and that he/she, as such corporate officer, being authorized to do so, executed the within instrument for the purposes therein contained by signing the name of the corporation thereto as such VICE PRESIDENT.
WITNESS my hand and official seal at office in said county THIS 23RD DAY OF APRIL IN THE YEAR 2009

_____
BRYAN J. BLY
Notary Public/Commission expires 07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691056
Expires July 01, 2011
Bonded Through National Notary Assn.

**WHEREAS, MEAGAN EVANS** was the original Trustor, **JOAN H ANDERSON** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 02/24/2004 in KING County, Washington, under Doc No: 20070301001246 or Book page ;

NATIONWIDE TITLE CLEARING, INC., as successor Trustee under said Deed of Trust and as successor Trustee, having received from the Beneficiary under said Deed of Trust a written request to reconvey, reciting that the obligation(s) secured by the Deed of Trust have been fully satisfied, does hereby grant, bargain, sell and reconvey, unto the parties entitled thereto all right, title and interest which was heretofore acquired by said Trustee under said Deed of Trust.

**Dated: 04/23/2009**
**NATIONWIDE TITLE CLEARING, INC.**

BY: _____
    **DHURATA DOKO      VICE PRESIDENT**

form1/RCNWA1

Page 2

Loan#: 0999906014

## SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

STATE OF FLORIDA
COUNTY OF PINELLAS

On 04/23/2009 before me, THE UNDERSIGNED, Notary Public, personally appeared DHURATA DOKO
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity,
and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed the
same.

WITNESS MY hand and official seal.

_____
Notary Public

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

Prepared By: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

CMCRC 9741594 ARY2106745   100052599990601490 MERS PHONE 1-888-679-MERS form1/RCNWA1

*9741594*

Exhibit D

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3



**20040301001246**
PACIFIC NW TIT DT
PAGE001 OF 016        35.00
03/01/2004 12:50
KING COUNTY, WA

Assessor's Parcel or Account Number 923940-0120-01

Abbreviated Legal Description Unit 104, Bldg B Wellington
Townhomes, a cndo V 144 Pg 30,42
[Include lot, block and plat or section, township and range]

Full legal description located on page 11 .

FILED BY FNWT
141 35
PNWT 5586484

Escrow No.: 22046492
V1 WBCD LOAN # 999906014

————————————[Space Above This Line For Recording Data]————————————

## DEED OF TRUST

MIN 100052599990601490

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document
are also provided in Section 16
**(A) "Security Instrument"** means this document, which is dated **FEBRUARY 24, 2004**,
together with all Riders to this document
**(B) "Borrower"** is  **MEAGAN EVANS AN Unmarried Womanv AS HER SOLE & SEPARATE
PROPERTY.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  **NEIGHBORHOOD MORTGAGE INC.**

Lender is a **CORPORATION,**                          organized and existing under the
laws of  **WASHINGTON.**                                    Lender's address is
**2305 OLYMPIA AVE NE, RENTON, WA  98056.**

Initials:

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3048 1/01
© 1999-2002 Online Documents, Inc        **Page 1 of 11**                    WAEDEED  0211
**02-20-2004 17:59**

V1 WBCD LOAN # 999906014

**(D) "Trustee"** IS JOAN H. ANDERSON, EVP ON BEHALF OF FLAGSTAR BANK, FSB.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns **MERS is the beneficiary under this Security Instrument** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

**(F) "Note"** means the promissory note signed by Borrower and dated **FEBRUARY 24, 2004.**
The Note states that Borrower owes Lender ****ONE HUNDRED FORTY THOUSAND AND NO/100
************************************************************************
Dollars (U.S    **$140,000.00**   ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2034.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property "

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower [check box as applicable]

[x] Adjustable Rate Rider   [x] Condominium Rider   [ ] Second Home Rider
[ ] Balloon Rider   [ ] Planned Unit Development Rider   [ ] Other(s) [specify]
[ ] 1-4 Family Rider   [ ] Biweekly Payment Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq ) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender. (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and

Initials: [signature]

WASHINGTON–Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01
© 1999-2002 Online Documents, Inc       **Page 2 of 11**                        WAEDEED
02-20-2004  17:59

V1 WBCD LOAN # 999906014

the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**
[Type of Recording Jurisdiction] of King                                    [Name of Recording Jurisdiction]
**Unit 104, Building B, Wellington Townhomes, A condominium, according to the Condominium Declaration recorded under Recording Number 9806051970, and amendments thereto, if any, and in Volume 149 of Condominiums, pages 30 through 42, inclusive, in King County, Washington.**
**APN #: 923940-0120-01**

which currently has the address of **23501 62nd Ave S  #B104, Kent,**
                                                                                        [Street] [City]
Washington  98032  ("Property Address").
                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right. to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows
**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U S. currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender· (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

Initials:

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3048 1/01
© 1999-2002 Online Documents, Inc.        **Page 3 of 11**
02-20-2004 17:59                                                            WAEDEED

V1 WBCD LOAN # 999906014

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for. (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner

Initials: ___

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3048 1/01
© 1999-2002 Online Documents, Inc.      **Page 4 of 11**
02-20-2004 17:59                                                        WAEDEED

V1 WBCD LOAN # 999906014

acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either. (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

Initials: ___

WASHINGTON–Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3048 1/01
© 1999-2002 Online Documents, Inc          **Page 5 of 11**                                    WAEDEED
02–20–2004  17:59

V1 WBCD LOAN # 999906014

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/ or repairing the Property Lender's actions can include, but are not limited to. (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease Borrower shall not, without the express written consent of Lender, alter or amend the ground lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender

Initials: _____

V1 WBCD LOAN # 999906014

requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01

Initials: [handwritten]

© 1999-2002 Online Documents, Inc.                      **Page 7 of 11**

02-20-2004 17:59                                                                        WAEDEED

V1 WBCD LOAN # 999906014

secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then· (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note )  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender

Initials: _____

WASHINGTON--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3048 1/01
© 1999-2002 Online Documents, Inc     **Page 8 of 11**
02-20-2004  17:59                                                    WAEDEED

V1 WBCD LOAN # 999906014

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower· (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender· (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable law provides

Initials:

V1 WBCD LOAN # 999906014

a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

   **21. Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances. gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

   NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows.

   **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

   If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale

   Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

   **23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

Initials:

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3048 1/01
© 1999-2002 Online Documents, Inc     **Page 10 of 11**                     WAEDEED
02-20-2004 17:59

V1 WBCD LOAN # 999906014

evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument  The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MEAGAN EVANS

State of WASHINGTON                                    County of KING SS:

On this day personally appeared before me   MEAGAN   EVANS

_____

to me known to be the individual _____ described in and who executed the within and foregoing instrument, and acknowledged that _____ signed the same as _____ free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this  24  day of FEBRUARY 2004

Notary Public in and for the State of Washington, residing at King Co.

My Appointment Expires on:  10-9-06

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3048 1/01
© 1999-2002 Online Documents, Inc        **Page 11 of 11**                      WAEDEED
02-20-2004 17:59

Unofficial Copy

V1 WBCD LOAN # 999906014
MIN: 100052599990601490

# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **24TH** day of **FEBRUARY, 2004,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **NEIGHBORHOOD MORTGAGE INC, A WASHINGTON CORPORATION**

("Lender")

of the same date and covering the property described in the Security Instrument and located at: **23501 62nd Ave S #B104**
**Kent, WA 98032.**

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of **4.875%.** The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1ST** day of **APRIL, 2009,** and the adjustable interest rate I will pay may change on that day every **12TH** month thereafter  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date "

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND SEVEN-EIGHTHS** percentage point(s) ( **2.875%** ) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **6.875%** or less than **2.875%.**  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000%** ) from the rate

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01                                                                                         Initials: _JNO_
© 2001-2002 Online Documents, Inc              **Page 1 of 3**                            F3187RDU  0208
**02-20-2004 17:59**

of interest I have been paying for the preceding __12__ month(s). My interest rate will
never be greater than __10.875%__ which is called the "Maximum Rate."

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the
amount of my new monthly payment beginning on the first monthly payment date after
the Change Date until the amount of my monthly payment changes again.
**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed
interest rate to an adjustable interest rate and of any changes in my adjustable interest
rate before the effective date of any change. The notice will include the amount of my
monthly payment, any information required by law to be given to me and also the title
and telephone number of a person who will answer any question I may have regarding
the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
1.   Until Borrower's initial fixed interest rate changes to an adjustable interest rate under
the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall
read as follows:
     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest
in the Property, including, but not limited to, those beneficial interests transferred
in a bond for deed, contract for deed, installment sales contract or escrow
agreement, the intent of which is the transfer of title by Borrower at a future date
to a purchaser.
     If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender
may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law.
     If Lender exercises this option, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from the
date the notice is given in accordance with Section 15 within which Borrower
must pay all sums secured by this Security Instrument. If Borrower fails to pay
these sums prior to the expiration of this period, Lender may invoke any
remedies permitted by this Security Instrument without further notice or demand
on Borrower.

2.   When Borrower's initial fixed interest rate changes to an adjustable interest rate
under the terms stated in Section A above, Uniform Covenant 18 of the Security
Instrument described in Section B1 above shall then cease to be in effect, and the
provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read
as follows:
     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest
in the Property, including, but not limited to, those beneficial interests transferred
in a bond for deed, contract for deed, installment sales contract or escrow
agreement, the intent of which is the transfer of title by Borrower at a future date
to a purchaser.
     If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender
may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by
Lender to evaluate the intended transferee as if a new loan were being made to
the transferee, and (b) Lender reasonably determines that Lender's security will
not be impaired by the loan assumption and that the risk of a breach of any
covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family--Fannie Mae Uniform Instrument
Form 3187 6/01
Initials: ___
© 2001-2002 Online Documents, Inc            **Page 2 of 3**            F3187RDU
02-20-2004 17:59

V1 WBCD LOAN # 999906014

V1 WBCD LOAN # 999906014

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____        2-24-04
MEAGAN EVANS                                        Date

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01
© 2001-2002 Online Documents, Inc        Page 3 of 3        F3187RDU
02-20-2004 17:59

V1 WBCD LOAN # 999906014
MIN #: 100052599990601490

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **24TH** day of **FEBRUARY, 2004**
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to **NEIGHBORHOOD**
**MORTGAGE INC, A WASHINGTON CORPORATION**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: **23501 62nd Ave S  #B104, Kent, WA 98032.**

The Property includes a unit in, together with an undivided interest in the common
elements of, a condominium project known as: **KENT**

(the "Condominium Project").
If the owners association or other entity which acts for the Condominium Project (the
"Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association
and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements
made in the Security Instrument, Borrower and Lender further covenant and agree as
follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations
under the Condominium Project's Constituent Documents. The "Constituent Documents"
are the. (i) Declaration or any other document which creates the Condominium Project;
(ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent
Documents

**B.  Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included within
the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, from which Lender requires insurance, then (i) Lender waives the
provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments
for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to
maintain property insurance coverage on the Property is deemed satisfied to the extent that
the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan
Borrower shall give Lender prompt notice of any lapse in required property
insurance coverage provided by the master or blanket policy

In the event of a distribution of property insurance proceeds in lieu of restoration or
repair following a loss to the Property, whether to the unit or to common elements, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender for
application to the sums secured by the Security Instrument, whether or not then due,
with the excess, if any, paid to Borrower

**C.  Public Liability Insurance.** Borrower shall take such actions as may be
reasonable to insure that the Owners Association maintains a public liability insurance
policy acceptable in form, amount, and extent of coverage to Lender

**D.  Condemnation.** The proceeds of any award or claim for damages, direct or
consequential, payable to Borrower in connection with any condemnation or other
taking of all or any part of the Property, whether of the unit or of the common elements,
or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid
to Lender  Such proceeds shall be applied by Lender to the sums secured by the
Security Instrument as provided in Section 11

Initials:

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
© 1999-2002 Online Documents, Inc                     **Page 1 of 2**                     F3140RDU  0205
02-20-2004 17:59

V1 WBCD LOAN # 999906014

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)
MEAGAN EVANS

MULTISTATE CONDOMINIUM RIDER--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3140 1/01
© 1999-2002 Online Documents, Inc                    **Page 2 of 2**                    F3140RDU
02-20-2004  17:59

Exhibit E

**Instrument Number: 20200512000681  Document:ADT Rec: $18.00 Page-1 of 1**
**Record Date:5/12/2020 1:44 PM**
Electronically Recorded  King County, WA

Case 2:19-cv-00813-BJR   Document 14   Filed 08/20/21   Page 64 of 81

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Real Time Resolutions, Inc.
PO Box 36655
Dallas, TX 75235-9833

| | |
|---|---|
| TS No: WA08000298-19-1 | MIN No: 100237600000820753 |
| TO No.: 191299809-WA-MSI | MERS Phone: 888-679-6377 |
| APN 070571057002 | MERS Address:  P.O. Box 2026, Flint, MI 48501-2026 |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns hereby grants, assigns, and transfers to **Real Time Resolutions, Inc.**, whose address is PO Box 36655, Dallas, TX 75235-9833 all its interest under that certain Deed of Trust dated February 27, 2007, executed by ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE as Trustor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY as Trustee and recorded on March 1, 2007 as Instrument No. 20070301001246 of official records, in the Office of the County Recorder of King County, Washington.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein, commonly known as 23829 SE 248TH STREET, MAPLE VALLEY, WA 98038 and more fully described as follows: LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

Dated: 5/12/20

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns

SHAUNA BOEDEKER, VICE PRESIDENT

State of Texas
County of Dallas

On 5/12/20 , before me,  JASMIN MORENO, a Notary Public in and for Dallas in the State of Texas,  personally appeared  SHAUNA BOEDEKER, VICE PRESIDENT ,personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

JASMIN MORENO
Notary Expires: 09/10/2022
(This are for notorial seal)



JASMIN MORENO
My Notary ID # 131715198
Expires September 10, 2022

Exhibit F

*LITIGATION/TRUSTEE'S SALE/*
*CONTRACT FORFEITURE GUARANTEE*

# Policy No.

WA2035-46-WA EXAMPLE-2011.7208647-83851157

NATIONAL   TITLE   INSURANCE   of NEW YORK, INC.

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, P CVKQP CN TITLE INSUR-ANCE, qhP GY [ QTM KP EQ herein called the Company, guarantees the Assured against nquu pqv exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, on the Date of Guarantee stated in Schedule A, the title to the herein described estate or interest was vested in the vestee named, subject to the matters shown as Exceptions in Schedule B, which Exceptions are not necessarily shown in the order of their priority.

*In Witness whereof,* NATIONAL TITLE INSURANCE of NEW YORK, INC. has caused this policy to be signed and sealed as of the date of policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

CHICAGO TITLE INSURANCE COMPANY

By:

ATTEST                          President

                                Secretary

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this Guarantee:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Guarantee.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Guarantee.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Guarantee.

3. Defects, liens, encumbrances, adverse claims against the title as guaranteed, or other matters:

   (a) created, suffered, assumed or agreed to by one or more of the Assured;

   (b) not known to the Company, not recorded in the public records at Date of Guarantee but known to one or more of the Assured at Date of Guarantee;

   (c) resulting in no loss or damage to the Assured;

   (d) attaching or created subsequent to Date of Guarantee.

4. No guarantee is given nor liability assumed with respect to the identity of any party named or referred to in Schedule B or with respect to the validity, legal effect or priority of any matter shown therein.

5. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

6. Unpatented mining claims; reservations or exceptions in United States Patents or in Acts authorizing the issuance thereof; Indian tribal codes or regulations, Indian treaty or aboriginal rights, including easements or equitable servitudes; water rights, claims or title to water.

7. Title to any property beyond the lines of the land expressly described in the description set forth in this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways on which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any other structure or improvement; or any rights or easements therein unless such property, rights or easements are expressly and specifically set forth in said description.

8. Any loss or damage which arises out of any transaction affecting the estate or interest shown in Schedule A of this Guarantee by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

# CONDITIONS AND STIPULATIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this Guarantee mean:
   (a) "land": the land described in this Guarantee and improvements affixed thereto which by law constitute real property.
   (b) "public records": records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a) (iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.
   (c) "date," "Date of Guarantee": the effective date.
   (d) "the Assured": the party or parties named as the

Assured in this Guarantee, or in a supplemental writing executed by the Company.
   (e) "mortgage": mortgage, deed of trust, trust deed, real estate contract or other security instrument.

2. **PROSECUTION OF ACTIONS**
   (a) The Company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary or desirable to establish or confirm the matters herein guaranteed; and the Company may take any appropriate action under the terms of this Guarantee whether or not it shall be liable thereunder and shall not thereby concede liability or waive any provision hereof.
   (b) In all cases where the Company does so institute

and prosecute any action or proceeding, the Assured shall permit the Company to use, at its option, the name of the Assured for such purpose. Whenever requested by the Company, the Assured shall give the Company all reasonable aid in prosecuting such action or proceeding, and the Company shall reimburse the Assured for any expense so incurred.

### 3. NOTICE OF LOSS – LIMITATION OF ACTION

A statement in writing or any loss or damage for which it is claimed the Company is liable under this Guarantee shall be furnished to the Company within sixty days after such loss or damage shall have been determined, and no right of action shall accrue to the Assured under this Guarantee until thirty days after such statement shall have been furnished, and no recovery shall be had by the Assured under this Guarantee unless the action shall be commenced thereon within two years after expiration of said thirty day period. Failure to furnish such statement of loss or damage or to commence such action within the time hereinbefore specified, shall be a conclusive bar against maintenance by the Assured of any action under this Guarantee.

### 4. OPTION TO PAY, SETTLE OR COMPROMISE CLAIMS

The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage, the Company shall have the option to purchase the indebtedness secured by said mortgage. Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of a claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness and the mortgage securing the same to the Company upon payment of the purchase price.

### 5. LIMITATION OF LIABILITY – PAYMENT OF LOSS

(a) The liability of the Company under this Guarantee shall be limited to the amount of actual loss sustained by the Assured because of reliance upon the assurances herein set forth, but in no event shall such liability exceed the amount of the liability stated within this Guarantee.

(b) The Company will pay all costs imposed upon the Assured in litigation carried on by the Company for the Assured, and all costs and attorneys' fees in litigation carried on by the Assured with the written authorization of the Company.

(c) No claim for damages shall arise or be maintainable under this Guarantee (1) if the Company after having received notice of an alleged defect, lien or encumbrance not shown as an Exception or excluded herein removes such defect, lien or encumbrance within a reasonable time after receipt of such notice, or (2) for liability voluntarily assumed by the Assured in settling any claim or suit without written consent of the Company.

(d) All payments under this Guarantee, except for attorneys' fees as provided for in paragraph 5(b) hereof, shall reduce the amount of the liability hereunder pro tanto, and no payment shall be made without producing, this Guarantee for endorsement of such payment unless the Guarantee be lost or destroyed, in which case proof of such loss or destruction shall be furnished to the satisfaction of the Company.

(e) When liability has been definitely fixed in accordance with the conditions of this Guarantee, the loss or damage shall be payable within thirty days thereafter.

### 6. SUBROGATION UPON PAYMENT OR SETTLEMENT

Whenever the Company shall have settled a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured, and it shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to such claim had this Guarantee not been issued. If the payment does not cover the loss of the Assured, the Company shall be subrogated to such rights and remedies in the proportion which said payment bears to the amount of said loss. The Assured if requested by the Company, shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect such right or subrogation, and shall permit the Company to use the name of the Assured in any transaction or litigation involving such rights or remedies.

### 7. GUARANTEE ENTIRE CONTRACT

Any action or actions or rights of action that the Assured may have or may bring against the Company arising out of the subject matter hereof must be based on the provisions of this Guarantee.

No provision or condition of this Guarantee can be waived or changed except by a writing endorsed or attached hereto signed by the President, a Vice President, the Secretary, an Assistant Secretary or other validating officer of the Company.

### 8. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to it at the office which issued this Guarantee or to:

NATIONAL TITLE INSURANCE of NEW YORK, INC.
National Claims Department
Ú*ÊÚÊÓ*¢*I*Í*€GH
Ræ&A*•*[*}*çä*|^Ê*Ø|*[*ãäæHGGHGÊÍ*€GH

### 9.

THE FEE SPECIFIED WITHIN THIS GUARANTEE IS THE TOTAL FEE FOR TITLE SEARCH AND EXAMINATION AND FOR THIS GUARANTEE.

# NATIONAL TITLE INSURANCE OF NEW YORK



**National Title Insurance Of New York**

P.O. Box 45023

Jacksonville, Florida 32232-5023

**SERVICELINK TITLE AGENCY, INC.**
**3220 EL CAMINO REAL, IRVINE, CA 92602**
**(714) 247-7000 • (800) 323-0165**

**LITIGATION/TRUSTEE'S SALE/CONTRACT FORFEITURE GUARANTEE**

**SCHEDULE A**

|  |  |
|---|---|
| YOUR NO.: | ██████98-19 |
| ORDER NO.: | ██████9809 |
| PREMIUM: | █████ |
| SALES TAX: | ████ |
| LIABILITY: | ██████ |
| DATED: | **DECEMBER 26, 2019 @ 8:00 A.M.** |

1. **NAME(S) OF ASSURED:**

   TRUSTEE CORPS, AS TRUSTEE AND
   LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, AS BENEFICIARY

2. **THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED, OR REFERRED TO, AND COVERED BY THIS GUARANTEE IS:**

   A FEE

3. **TITLE TO THE ESTATE OR INTEREST, AT THE DATE HEREOF, IS VESTED IN:**

   IRMA RIVERA, AS PROVIDED BY INSTRUMENT RECORDED MAY 5, 2015, UNDER RECORDING NO. 20150505000703, OF OFFICIAL RECORDS

4. **THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE CITY OF MAPLE VALLEY, COUNTY OF KING, STATE OF WASHINGTON, AND IS DESCRIBED AS FOLLOWS:**

   SEE EXHIBIT "A"

ORDER NO: ███9809

# EXHIBIT A

**REF.: ██████98-19**

LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

NOTE FOR INFORMATIONAL PURPOSES ONLY:

THE FOLLOWING MAY BE USED AS AN ABBREVIATED LEGAL DESCRIPTION ON THE DOCUMENTS TO BE RECORDED, PER AMENDED RCW 65.04. SAID ABBREVIATED LEGAL DESCRIPTION IS NOT A SUBSTITUTE FOR A COMPLETE LEGAL DESCRIPTION WITHIN THE BODY OF THE DOCUMENT.

LT 57, BELMONT WOODS DIV. II

ORDER NO: ███9809

# EXCEPTIONS

THE TITLE TO SAID ESTATE OR INTEREST IS SUBJECT TO THE FOLLOWING EXCEPTIONS:

1.     GENERAL TAXES PAYABLE AFTER FEBRUARY 15th:  THE FIRST HALF TAXES ARE DUE PRIOR TO MAY 1ST; THE SECOND HALF TAXES ARE DUE PRIOR TO NOVEMBER 1ST:

| | | |
|---|---|---|
| YEAR | : | 2019 |
| AMOUNT BILLED | : | $4,509.51 |
| AMOUNT PAID | : | $4,509.51 |
| AMOUNT DUE | : | $0.00 |
| TAX ACCOUNT NO./PARCEL NO. | : | 070571-0570-02 |
| LEVY CODE/TCA | : | 1818 |

2.     THE LIEN OF SUPPLEMENTAL TAXES, IF ANY.

3.     SPECIAL ASSESSMENTS, IF ANY, WHICH ARE NOT BILLED AND COLLECTED BY THE COUNTY TAX ASSESSOR.

4.     EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO, AS DELINEATED OR AS OFFERED FOR DEDICATION, ON THE MAP OF SAID TRACT.

| | | |
|---|---|---|
| PURPOSE | : | SANITARY SEWER |
| AFFECTS | : | STRIP OF LAND 15 FEET IN WIDTH AS DELINEATED |

5.     EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO, AS GRANTED/RESERVED IN A DOCUMENT.

| | | |
|---|---|---|
| IN FAVOR OF | : | PUGET SOUND POWER & LIGHT COMPANY |
| PURPOSE | : | ELECTRIC TRANSMISSION AND/OR DISTRIBUTION SYSTEM |
| RECORDED | : | FEBRUARY 22, 1983, UNDER RECORDING NO. 8302220333, OF OFFICIAL RECORDS |
| AFFECTS | : | A RIGHT OF WAY 10 FEET IN WIDTH AS CONSTRUCTED OR TO BE CONSTRUCTED, EXTENDED OR RELOCATED WITHIN SAID PREMISES AND OTHER PROPERTY |

6.     EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO, AS GRANTED/RESERVED IN A DOCUMENT.

| | | |
|---|---|---|
| IN FAVOR OF | : | PACIFIC NORTHWEST BELL TELEPHONE COMPANY |
| PURPOSE | : | UNDERGROUND COMMUNICATION LINES AND ABOVE GROUND CABINET |
| RECORDED | : | AUGUST 23, 1985, UNDER RECORDING NO. 8508230461, OF OFFICIAL RECORDS |
| AFFECTS | : | A STRIP OF LAND 2 FEET IN WIDTH ALONG A CENTERLINE ESTABLISHED BY THE INSTALLATION OF THE COMMUNICATION LINES ACROSS THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION 22 |

ORDER NO: █████9809

7.    UNDERGROUND UTILITY EASEMENT AND THE TERMS AND CONDITIONS THEREOF:

|  |  |  |
|---|---|---|
| GRANTEE | : | PUGET SOUND POWER & LIGHT COMPANY |
| PURPOSE | : | ELECTRIC TRANSMISSION AND/OR DISTRIBUTION SYSTEM |
| AREA AFFECTED | : | A STRIP OF LAND 10 FEET IN WIDTH LYING PARALLEL WITH AND ADJOINING ALL PUBLIC AND PRIVATE STREETS AND ROAD RIGHTS OF WAY |
| RECORDED | : | JUNE 16, 1993 |
| RECORDING NUMBER | : | 9306160912 |

CONTAINS COVENANT PROHIBITING STRUCTURES OVER SAID EASEMENT OR OTHER ACTIVITIES WHICH MIGHT ENDANGER THE UNDERGROUND SYSTEM.

8.    EASEMENT(S) FOR THE PURPOSE(S) SHOWN BELOW AND RIGHTS INCIDENTAL THERETO, AS GRANTED/RESERVED IN A DOCUMENT.

|  |  |  |
|---|---|---|
| IN FAVOR OF | : | SOOS CREEK WATER AND SEWER DISTRICT, A MUNICIPAL CORPORATION |
| PURPOSE | : | SANITARY SEWER |
| RECORDED | : | SEPTEMBER 14, 1995, UNDER RECORDING NO. 9509140684, OF OFFICIAL RECORDS |
| AFFECTS | : | EASTERLY PORTION OF SAID PREMISES |

9.    EASEMENT PROVISIONS CONTAINED IN THE PLAT OF BELMONT WOODS DIV. II, AS FOLLOWS:

AN EASEMENT IS HEREBY RESERVED FOR AND GRANTED TO PUGET SOUND POWER & LIGHT COMPANY, U.S. WEST COMMUNICATIONS, WASHINGTON NATURAL GAS COMPANY, ANY CABLE TELEVISION COMPANY AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS UNDER AND UPON THE FRONT 10 FEET PARALLEL WITH AND ADJOINING THE STREET AND TRACT FRONTAGE OF ALL LOTS AND THE REAR 10 FEET OF ALL LOTS IN WHICH TO INSTALL, LAY, CONSTRUCT, RENEW, OPERATE AND MAINTAIN UNDERGROUND PIPE, CONDUIT, CABLES AND WIRES WITH NECESSARY FACILITIES AND OTHER EQUIPMENT FOR THE PURPOSE OF SERVING THIS SUBDIVISION AND OTHER PROPERTY WITH ELECTRIC, TELEPHONE, GAS, AND UTILITY SERVICE, TOGETHER WITH THE RIGHT TO ENTER UPON THE LOTS AT ALL TIMES FOR THE PURPOSES HEREIN STATED.

THESE EASEMENTS ENTERED UPON FOR THESE PURPOSES SHALL BE RESTORED AS NEAR AS POSSIBLE TO THEIR ORIGINAL CONDITION.

NO LINES OR WIRES FOR THE TRANSMISSION OF ELECTRIC CURRENT OR FOR TELEPHONE USE, CATV, FIRE OR POLICE SIGNALS, OR FOR OTHER PURPOSES SHALL BE PLACED OR PERMITTED TO BE PLACED UPON ANY LOT OUTSIDE THE BUILDINGS THEREON UNLESS THE SAME SHALL BE UNDERGROUND OR IN CONDUIT ATTACHED TO THE BUILDING.

ORDER NO: ████9809

10.   RESTRICTIONS CONTAINED ON THE FACE OF THE PLAT AS FOLLOWS:

NO LOT OR PORTION OF A LOT IN THIS PLAT SHALL BE DIVIDED AND SOLD OR RESOLD, OR OWNERSHIP CHANGED OR TRANSFERRED WHEREBY THE OWNERSHIP OF ANY PORTION OF THIS PLAT SHALL BE LESS THAN THE AREA REQUIRED FOR THE USE DISTRICT IN WHICH IT IS LOCATED.

11.   COVENANTS, CONDITIONS AND RESTRICTIONS (BUT OMITTING ANY COVENANTS OR RESTRICTIONS, IF ANY, BASED UPON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, HANDICAP, NATIONAL ORIGIN, CITIZENSHIP, IMMIGRATION STATUS, PRIMARY LANGUAGE, ANCESTRY, OR SOURCE OF INCOME, AS SET FORTH IN APPLICABLE STATE OR FEDERAL LAWS, EXCEPT TO THE EXTENT THAT SAID COVENANT OR RESTRICTION IS PERMITTED BY APPLICABLE LAW) AS SET FORTH IN THE DECLARATION OF RESTRICTIONS

RECORDED                         :   SEPTEMBER 17, 1993, UNDER RECORDING NO. 9309172232, OF OFFICIAL RECORDS

MODIFICATION(S) OF SAID COVENANTS, CONDITIONS AND RESTRICTIONS

RECORDED                         :   NOVEMBER 12, 1993, UNDER RECORDING NO. 9311122941, OF OFFICIAL RECORDS

SAID AMENDMENT IS A RE-RECORDING OF AMENDMENT RECORDED UNDER RECORDING NUMBER 9309292902.

12.   DEDICATION CONTAINED IN SAID PLAT AS FOLLOWS:

FURTHER, THE UNDERSIGNED OWNERS OF THE LAND HEREBY SUBDIVIDED WAIVE FOR THEMSELVES, THEIR HEIRS AND ASSIGNS AND ANY PERSON OR ENTITY DERIVING TITLE FROM THE UNDERSIGNED, ANY AND ALL CLAIMS FOR DAMAGES AGAINST KING COUNTY, ITS SUCCESSORS AND ASSIGNS WHICH MAY BE OCCASIONED BY THE ESTABLISHMENT, CONSTRUCTION, OR MAINTENANCE OF ROADS AND/OR DRAINAGE SYSTEMS WITHIN THIS SUBDIVISION OTHER THAN CLAIMS RESULTING FROM INADEQUATE MAINTENANCE BY KING COUNTY.

FURTHER, THE UNDERSIGNED OWNERS OF THE LAND HEREBY SUBDIVIDED AGREE FOR THEMSELVES, THEIR HEIRS AND ASSIGNS TO INDEMNIFY AND HOLD KING COUNTY, ITS SUCCESSORS AND ASSIGNS, HARMLESS FROM ANY DAMAGE, INCLUDING ANY COSTS OF DEFENSE, CLAIMED BY PERSONS WITHIN OR WITHOUT THIS SUBDIVISION TO HAVE BEEN CAUSED BY ALTERATIONS OF THE GROUND SURFACE, VEGETATION, DRAINAGE OR SURFACE OR SUBSURFACE WATER FLOWS WITHIN THIS SUBDIVISION OR BY ESTABLISHMENT, CONSTRUCTION OR MAINTENANCE OF THE ROADS WITHIN THIS SUBDIVISION. PROVIDED, THIS WAIVER AND INDEMNIFICATION SHALL NOT BE CONSTRUED AS RELEASING KING COUNTY, ITS SUCCESSORS OR ASSIGNS, FROM LIABILITY FOR DAMAGES, INCLUDING THE COST OF DEFENSE RESULTING IN WHOLE OR IN PART FROM THE NEGLIGENCE OF KING COUNTY, ITS SUCCESSORS OR ASSIGNS.

13.   NOTES CONTAINED ON THE FACE OF THE PLAT OF BELMONT WOODS DIV. II, AS HERETO ATTACHED.

ORDER NO: ████9809

14.     NOTICE OF CONNECTION CHARGES:

      FILED BY                :    CEDAR RIVER WATER AND SEWER DISTRICT
      RECORDED            :    FEBRUARY 22, 1988
      RECORDING NUMBER   :    8802220455

      AN AMENDMENT OF SAID NOTICE WAS RECORDED UNDER RECORDING NUMBER 9008241403, TO INCLUDE SAID PREMISES AND OTHER PROPERTY WITHIN THE BOUNDARIES OF THE AREA AFFECTED.

15.     RIGHT OF THE PUBLIC TO MAKE NECESSARY SLOPES FOR CUTS OR FILLS UPON SAID PREMISES IN THE REASONABLE ORIGINAL GRADING OF STREETS, AVENUES, ALLEYS AND ROADS, AS DEDICATED IN THE PLAT.

16.     A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW, AND ANY OTHER OBLIGATIONS SECURED THEREBY

      AMOUNT              :    $318,400.00
      DATED                :    FEBRUARY 27, 2007
      TRUSTOR             :    ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE
      TRUSTEE             :    FIRST AMERICAN TITLE INSURANCE COMPANY
      BENEFICIARY        :    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A SEPARATE CORPORATION THAT IS ACTING SOLELY AS A NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS
      LENDER              :    LIBERTY FINANCIAL GROUP, INC
      RECORDED            :    MARCH 1, 2007, UNDER RECORDING NO. 20070301001245, OF OFFICIAL RECORDS

17.     A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW, AND ANY OTHER OBLIGATIONS SECURED THEREBY

      AMOUNT              :    $79,600.00
      DATED                :    FEBRUARY 27, 2007
      TRUSTOR             :    ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE
      TRUSTEE             :    FIRST AMERICAN TITLE INSURANCE COMPANY
      BENEFICIARY        :    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A SEPARATE CORPORATION THAT IS ACTING SOLELY AS A NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS
      LENDER              :    LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
      RECORDED            :    MARCH 1, 2007, UNDER RECORDING NO. 20070301001246, OF OFFICIAL RECORDS

ORDER NO: ████9809

18.    A CLAIM OF LIEN

      AMOUNT CLAIMED      :   $575.97, PLUS ANY OTHER AMOUNTS OWING
      BY      :   KING   COUNTY   WASTEWATER   TREATMENT DIVISION
      RECORDED      :   APRIL  3,  2013,  UNDER  RECORDING  NO. 20130403001099, OF OFFICIAL RECORDS

      **NOTE: THE LIEN REFERENCED ABOVE, INCLUDING ANY ADDITIONAL PENALTIES OR INTEREST NOT DISCLOSED AT THE TIME OF RECORDING, MAINTAINS 'SUPER-PRIORITY' STATUS AND WILL NOT BE ELIMINATED BY NON-JUDICIAL FORECLOSURE OF THE DEED OF TRUST REFERENCED AS ITEM NO. 17 HEREIN.**

19.    NOTICE OF DELINQUENT ASSESSMENTS AND LIEN PAYABLE TO THE HOMEOWNERS' ASSOCIATION PURSUANT TO ANY DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND ANY AMENDMENTS REFERRED TO HEREIN.

      AMOUNT      :   $1,513.24
      OWNERS ASSOCIATION      :   BELMONT   WOODS   HOMEOWNERS' ASSOCIATION
      RECORDED      :   OCTOBER  23,  2015,  UNDER  RECORDING  NO. 20151023000493, OF OFFICIAL RECORDS

20.    RCW 61.24.040 (IV) AND (V) CALL FOR NOTICE TO HOLDERS OF ASSOCIATION LIENS, AND THE NAME, BUT NOT THE ADDRESS, OF SUCH LIEN-HOLDERS MAY BE DISCLOSED IN THE DECLARATION OF CC&R'S OR IN THE CONDOMINIUM/P.U.D. RIDER ATTACHED TO THE SUBJECT DEED OF TRUST.

21.    ANY SERVICE, INSTALLATION, CONNECTION, MAINTENANCE, TAP, CAPACITY OR CONSTRUCTION CHARGES FOR SEWER, WATER, ELECTRICITY, NATURAL GAS OR OTHER UTILITIES, OR GARBAGE COLLECTION AND DISPOSAL.

22.    THE LATEST TAX ROLL INFORMATION OBTAINED FROM THE COUNTY TAX ASSESSOR SHOWS THE SITUS ADDRESS ON SAID LAND AS 23829 SE 248TH STREET, MAPLE VALLEY, WA AND THE PARCEL NO./PROPERTY ID NO. AS 070571-0570-02.

23.    ANY BANKRUPTCY PROCEEDING THAT IS NOT DISCLOSED BY THE ACTS THAT WOULD AFFORD NOTICE AS TO SAID LAND, PURSUANT TO TITLE 11 U.S.C. 549 (C) OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED.

**END OF EXCEPTIONS**

ORDER NO: ████9809

NOTE 1:

UPON REQUEST **WITHIN 60 DAYS** FROM THE EFFECTIVE DATE OF THIS GUARANTEE, THE COMPANY WILL EXTEND THE EFFECTIVE DATE OF THIS GUARANTEE BY ENDORSEMENT TO INCLUDE NOTICE OF TRUSTEE'S SALE WITHOUT FURTHER CHARGE.

THIS COMPANY WILL, UPON REQUEST OF THE TRUSTEE OR HIS ATTORNEY, **ON THE 30TH DAY** PRECEDING THE DATE SET FOR THE TRUSTEE'S SALE, GIVE A VERBAL REPORT (TO BE FOLLOWED IMMEDIATELY BY ENDORSEMENT) ADVISING ON THE FILING OR NONFILING OF FEDERAL TAX LIENS AFFECTING THE PREMISES UNDER EXAMINATION. **(THE RESPONSIBILITY, HOWEVER, FOR DETERMINING THE "30TH DAY" BEFORE THE SALE AND MAKING THE REQUEST ON THAT SAME DAY IS TO BE BORNE BY THE TRUSTEE OR HIS ATTORNEY.)**

END OF NOTES

ORDER NO:██████9809

## SCHEDULE C

1.      THIS GUARANTEE IS RESTRICTED TO THE USE OF THE ASSURED SOLELY FOR THE PURPOSE OF PROVIDING INFORMATION TO FACILITATE THE COMMENCEMENT OF A SUIT AT LAW OR THE FORFEITURE OF A REAL ESTATE CONTRACT PURSUANT TO RCW 61.30 OR A FORECLOSURE PURSUANT TO RCW 61.24 OF A MORTGAGE DESCRIBED IN SCHEDULE B, AFFECTING THE LAND DESCRIBED IN SCHEDULE A. THE COMPANY SHALL HAVE NO LIABILITY FOR ANY RELIANCE HEREON EXCEPT FOR THE PURPOSE FOR WHICH THIS GUARANTEE IS ISSUED. THIS GUARANTEE IS NOT A COMMITMENT NOR AN OBLIGATION BY THE COMPANY TO ISSUE ANY POLICY OR POLICES OF TITLE INSURANCE INSURING SAID LAND, AND IS NOT TO BE USED AS A BASIS FOR CLOSING ANY TRANSACTION AFFECTING TITLE TO SAID LAND.

2.      UPON REQUEST WITHIN 60 DAYS FROM THE EFFECTIVE DATE OF THIS GUARANTEE, THE COMPANY WILL EXTEND THE EFFECTIVE DATE OF THIS GUARANTEE BY ENDORSEMENT TO INCLUDE THE FILING OF ANY COMPLAINT AND RECORDING OF NOTICE OF LIS PENDENS, RECORDING OF NOTICE OF INTENT TO FORFEIT REAL ESTATE CONTRACT, OR RECORDING OF NOTICE OF TRUSTEE'S SALE. SUCH AN ENDORSEMENT WILL SHOW AS ADDITIONAL EXCEPTIONS, AND THEREFORE EXCLUDE FROM COVERAGE, THOSE MATTERS ATTACHING SUBSEQUENT TO THE EFFECTIVE DATE OF THIS GUARANTEE BUT PRIOR TO THE ISSUANCE OF THE ENDORSEMENT.

3.      UPON REQUEST ON THE 30TH DAY PRECEDING THE DATE SET FOR THE FORFEITURE OF REAL ESTATE CONTRACT, OR TRUSTEE'S SALE, THE COMPANY WILL ISSUE AN ENDORSEMENT IDENTIFYING FEDERAL TAX LIENS, IF ANY, AFFECTING THE LAND DESCRIBED IN SCHEDULE A. THE RESPONSIBILITY, HOWEVER, FOR DETERMINING THE 30TH DAY BEFORE THE SALE OR FORFEITURE, AND FOR MAKING THE REQUEST ON THAT SAME DAY, IS BORNE BY THE ASSURED.

4.      THE COMPANY MAY, BUT IS NOT OBLIGATED TO, ISSUE ADDITIONAL ENDORSEMENTS EXTENDING THE EFFECTIVE DATE OF THIS GUARANTEE AT THE REQUEST OF THE ASSURED. THE FEE FOR SUCH ENDORSEMENTS WILL BE CHARGED ACCORDING TO THE COMPANY'S FILED RATE SCHEDULE FOR SUCH ENDORSEMENTS. THE COMPANY WILL NOT, AND ACCEPTS NO OBLIGATION TO, ISSUE AN ENDORSEMENT EXTENDING THE EFFECTIVE DATE TO, OR BEYOND, ANY SALE OF THE PREMISES OR A DECLARATION OF FORFEITURE OF A REAL ESTATE CONTRACT, TRUSTEE'S SALE OF DEED IN LIEU OF THEREOF.

5.      THIS REPORT IS RESTRICTED TO THE USE OF THE ATTORNEY FOR THE BENEFICIARY AND TRUSTEE UNDER DEED OF TRUST IDENTIFIED IN PARAGRAPH 17 ABOVE, AND IS FOR THE PURPOSE OF DETERMINING THOSE PERSONS TO BE GIVEN "NOTICE" OF A PROPOSED TRUSTEE'S SALE AFFECTING SAID PREMISES, AS REQUIRED BY R. C. W. 61.24.040 (WASHINGTON DEED OF TRUST ACT, AS AMENDED). IT IS NOT TO BE USED AS A BASIS FOR CLOSING ANY TRANSACTION AFFECTING TITLE TO SAID PROPERTY. ANY ADDRESS INFORMATION PROVIDED IN THIS REPORT IS DONE SO SOLELY AS A COURTESY TO THE ASSURED.   WE ACCEPT NO LIABILITY FOR ANY ERROR OR DEFECT IN SAID INFORMATION OR FOR ANY LOSS OR DAMAGE SUFFERED BY THE ASSURED FOR HAVING DEPENDED THEREON.

6.      ATTENTION IS CALLED TO THE SERVICEMEMBERS CIVIL RELIEF ACT OF 2003 (108 P.L. 189; 117 STAT. 2835; 2003 ENACTED H.R.100) AND AMENDMENTS THERETO AND THE MILITARY RESERVIST ACT OF 1991 (SEC. 800 TO 810, MILITARY VETERANS CODE) WHICH CONTAIN INHIBITIONS AGAINST THE SALE OF LAND UNDER A DEED OF TRUST IF THE OWNER IS ENTITLED TO THE BENEFITS OF SAID ACTS.

ORDER NO: █████9809

7.     ATTENTION IS CALLED TO THE FEDERAL TAX LIEN ACT OF 1966 WHICH, AMONG OTHER THINGS, PROVIDES FOR THE GIVING OF WRITTEN NOTICE OF SALE IN A SPECIFIED MANNER TO THE SECRETARY OF TREASURY OR HIS DELEGATE AS A REQUIREMENT FOR THE DISCHARGE OR DIVESTMENT OF A FEDERAL TAX LIEN IN A NON JUDICIAL SALE, AND ESTABLISHES WITH RESPECT TO SUCH LIEN A RIGHT IN THE UNITED STATES TO REDEEM THE PROPERTY WITHIN A PERIOD OF 120 DAYS FROM THE DATE OF ANY SUCH SALE.

7(B).   ATTENTION IS CALLED TO THE FEDERAL DEBT COLLECTION PROCEDURES ACT (28 USC 3001-3308) AND THE PROVISIONS OF 28 USC 2410 (ACTIONS AFFECTING PROPERTY ON WHICH UNITED STATES HAS LIEN) WHICH, AMONG OTHER THINGS PROVIDES FOR WRITTEN NOTICE TO BE GIVEN TO THE UNITED STATES, AND PROVIDES FOR THE DISCHARGE OF THE PROPERTY FROM THE MORTGAGE OR OTHER LIEN HELD BY THE UNITED STATES, AND PROVIDES THAT THE UNITED STATES SHALL HAVE ONE YEAR FROM THE DATE OF SALE WITHIN WHICH TO REDEEM.

8.     SAID LAND IS SITUATED IN THE CITY OF MAPLE VALLEY, COUNTY OF KING, WASHINGTON.

9.     PUBLICATION MAY BE MADE IN:

       DAILY JOURNAL OF COMMERCE (WA)

10.    REQUESTS HAVE BEEN RECORDED BY THE PERSONS NAMED BELOW FOR SPECIAL NOTICE OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE UNDER SAID DEED OF TRUST:

       NONE

11.    THE NAMES AND ADDRESSES OF ADDITIONAL PERSONS WHO ARE ENTITLED TO RECEIVE A COPY OF THE NOTICE OF SALE ARE:

       CURRENT OCCUPANT
       23829 SE 248TH STREET
       MAPLE VALLEY, WA 98038
       (CURRENT OCCUPANT)

       ALBERTO RIVERA MONROY
       23829 SE 248TH STREET
       MAPLE VALLEY, WA 98038
       (TRUSTOR)

       IRMA PARRA-RIVERA
       23829 SE 248TH STREET
       MAPLE VALLEY, WA 98038
       (TRUSTOR)

       IRMA RIVERA
       23829 SE 248TH
       MAPLE VALLEY, WA 98038
       (VESTEE)

IRMA RIVERA
23829 SE 248TH STREET
MAPLE VALLEY, WA 98038
(VESTEE)

IRMA PARRA-RIVERA
23829 SE 248TH
MAPLE VALLEY, WA 98038
(VESTEE/AKA)

IRMA RANA
23829 SE 248TH
MAPLE VALLEY, WA 98038
(VESTEE/AKA)

IRMA RANA
23829 SE 248TH STREET
MAPLE VALLEY, WA 98038
(VESTEE/AKA)

KING COUNTY DEPARTMENT OF NATURAL RESOURCES & PARKS
C/O WASTEWATER TREATMENT DIVISION
CAPACITY CHARGE PROGRAM
201 SO. JACKSON ST MS: KSC-NR-0502
SEATTLE, WA 98104
(REFERS TO ITEM(S) 18)

BELMONT WOODS HOMEOWNERS' ASSOCIATION
C/O J. DAVID HUHS
CURRAN LAW FIRM P.S.
555 WEST SMITH ST.
KENT, WA 98032
(REFERS TO ITEM(S) 19)

**END OF SCHEDULE C**

**SERVICELINK TITLE AGENCY, INC.**
**3220 EL CAMINO REAL, IRVINE, CA 92602**
**(714) 247-7000 • (800) 323-0165**

**TRANSMITTAL**


TO:                                                           DATE:  JANUARY 3, 2020

TRUSTEE CORPS
17100 GILLETTE AVE
IRVINE, CA  92614

ATTN:

REF. NO.: ████████98-19
ORDER NO.: ██████9809


PLEASE FIND ENCLOSED HEREWITH ITEMS CHECKED BELOW:

___      CERTIFIED COPY

___      OWNERS POLICY

___      ALTA POLICY

___      CORRECTED GUARANTEE, POLICY AND/OR ENDORSEMENT

___      ENDORSEMENT

___      PRELIMINARY REPORT

___      SUPPLEMENTAL REPORT

  X      **LITIGATION /TRUSTEE'S SALE/CONTRACT FORFEITURE GUARANTEE**


MIKE SCOTT, TITLE OFFICER