Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ALBERTO RIVERA MONROY, *et al*.,

Plaintiffs,

v.

REAL TIME RESOLUTIONS, INC., *et al.*,

Defendants.

Case No. 2:21-cv-00813-BJR

**DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE AND MEMORANDUM IN SUPPORT**

## <u>CERTIFICATION OF CONFERRAL</u>

The undersigned certifies that on August 19, 2021, MERS' counsel met and conferred with counsel for Plaintiffs by telephone. The parties made a good faith effort to resolve the dispute, discussed each of the arguments herein in detail, but have been unable to do so. During the August 19, 2021 telephone conversation, counsel for MERS notified Plaintiffs' counsel that MERS would request dismissal of the claims pending against MERS.

## <u>MOTION</u>

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS" or "Defendant") hereby moves this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' Complaint with prejudice as to MERS.

//

//

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 2:21-CV-00813-BJR- PAGE 1**

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   INTRODUCTION

3

Plaintiffs ask this Court to grant them an unequitable windfall and let them walk away from

4

their second mortgage without paying it off.  They make no claim to having actually paid this debt that

5

they undisputedly incurred. Rather, their entire basis for seeking this unwarranted windfall is a

6

defective reconveyance recorded in the public records that plainly has no intentional relationship to

7

their second mortgage.  The defective reconveyance references **a different borrower and a different**

8

**lender**.  In relying entirely on this defective reconveyance, Plaintiffs wholly omit any reference to the

9

unrelated borrower and unrelated lender set forth in the document, clinging entirely to the reference in

10

the reconveyance to a recorded document number that inadvertently matches the document number for

11

the deed of trust securing their second mortgage. Plaintiffs' contrived claims based on this obviously

12

unrelated reconveyance must be dismissed.  The reconveyance did not "extinguish" their deed of trust.

13

They are plainly not entitled to the unequitable relief that they are seeking from a debt that they do not

14

even claim was repaid.

15

Based on a dubious set of facts, Plaintiffs bring suit against their current deed of trust

16

beneficiary, trustee, and MERS, as the former designated nominee for the original beneficiary, its

17

successors and assigns. Plaintiffs assert five claims against MERS for: (1) alleged violation of Deed of

18

Trust Act ("DTA"); (2) for declaratory judgment; (3) alleged violation of the Washington Consumer

19

Protection Act ("CPA"); (4) for negligent misrepresentation; and (5) for negligence. These claims are

20

unsupported by both fact and Washington law.

21

Initially, Plaintiffs incorrectly allege that MERS has signed "conflicting" documents by

22

recording the alleged reconveyance of the deed of trust and then a later assignment of the deed of trust.

23

However, it is apparent from the face of the reconveyance, which was attached to the Complaint, that

24

**MERS did not even execute the disputed reconveyance portion of the document**.  This fact alone

25

requires dismissal of Plaintiffs' CPA and negligent misrepresentation claims.

26

//

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 2:21-
CV-00813-BJR- PAGE 2**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1

2

3

Moreover, MERS has no interest in the property and has taken no action to foreclose the property. Accordingly, the Court should also dismiss Plaintiffs' claim for injunctive and declaratory relief against MERS.

4

5

6

7

Further, their claim under the DTA is based solely on the assignment, executed by MERS, which Plaintiffs allege to be improper. However, Washington law is clear: as non-parties to the assignment, Plaintiffs have no standing to challenge the assignment.  Therefore, the DTA claim also fails as a matter of law.

8

9

10

Finally, Plaintiffs' negligence claim against MERS must be dismissed because MERS, in its role as designated nominee for the original beneficiary of the deed of trust, its successors and assigns, owed Plaintiffs no duty under Washington law.

11

12

Because it is impossible for Plaintiffs to assert a legal cause of action against MERS, Plaintiffs' Complaint must be dismissed with prejudice as to MERS.

13

## II.    FACTUAL ALLEGATIONS

14

### A.    Plaintiffs Grant the Subject Deed of Trust

15

16

17

18

19

20

21

On February 28, 2007, Plaintiffs Alberto Rivera Monroy and Irma Parra-Rivera ("Plaintiffs'") executed a Deed of Trust (the "Deed of Trust") in favor of MERS as designated nominee for Liberty Financial Group, Inc., beneficiary of the Deed of Trust, its successors and assigns ("Liberty"), to secure a note in the amount of $79,600. The Deed of Trust is attached hereto as **Exhibit "A"**.[1] The Deed of Trust is recorded in the Official Records at 20070301001246 of the Public Records of King County, Washington. *Id*. The Deed of Trust was for a second mortgage on Plaintiffs' property. *See* Compl. ¶ 11.

22

//

23

//

24

25

26

---

[1] Defendant's exhibits A, B, D and  E were each attached as exhibits to Plaintiffs' complaint. *See* Compl. Exhibits A, B, D, and E., As such, they are properly before the Court as part of this Motion and are simply attached hereto for the Court's convenience.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 2:21-CV-00813-BJR- PAGE 3**

**B.      The Alleged Reconveyance Doesn't Name Plaintiffs**

Plaintiffs contend that, on April 23, 2009, a Substitution of Trustee and Deed of Reconveyance was recorded in the Official Records at 20090603001231 of the Public Records of King County, Washington (the "Reconveyance") related to their Deed of Trust. A true and correct copy is attached hereto as **Exhibit "B."**   However, this purported Reconveyance plainly bears no intentional connection to Plaintiffs or their Deed of Trust. The plain language of the Reconveyance reveals:

(1) it was for a different borrower, "Meagan Evans," who is named as the original trustor and is not a party in this litigation;

(2) the date of the subject deed of trust referenced in the Reconveyance was "2/24/04," which does not match the recording date for Plaintiffs' Deed of Trust; and

(3) the Reconveyance references a different indebtedness held by a different lender, "Neighborhood Mortgage Inc." *Id.*

The only piece of information in the Reconveyance that connects in any manner to Plaintiffs is the reference to "Doc. No.: 20070301001246," which inadvertently matches the Deed of Trust document number. Ex. A.[2]

Notably, Plaintiffs make no claim to have paid the underlying indebtedness or to have otherwise satisfied the debt secured by the Deed of Trust to explain why it would be reconveyed. *See* Compl., *generally*.

**C.      MERS Assigned Its Interest In the Deed of Trust**

On May 12, 2020, MERS assigned its interest in the Deed of Trust (the "Assignment") to defendant Real Time Resolutions, Inc. ("Real Time").   A true and correct copy of the Assignment is attached hereto as **Exhibit "D".**   The Assignment references the correct borrowers, original lender, and

---

[2] The deed of trust for Meagan Evans, which was repeatedly referenced in the Reconveyance, was filed as instrument number 20040301001246 on February 24, 2004.  A copy of the publically recorded deed of trust is attached hereto as **Exhibit "C"**. A comparison of the instrument numbers for Plaintiffs' Deed of Trust and the Meagan Evans deed of trust reveals the numbers nearly match, except for one number.  The Meagan Evans deed of trust is referenced in Plaintiffs' exhibits and the Court may take judicial notice of the deed of Trust as a publically recorded document. *See, e.g., Petheram v. Wells Fargo Bank*, 2013 WL 4761049, at *1 (W.D. Wash. Sept. 3, 2013); *Campidoglio LLC v. Wells Fargo & Co.*, 2012 WL 4514333, at *3 (W.D. Wash. Oct. 2, 2012) (taking judicial notice of mortgage notes and deeds of trust).

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 2:21-CV-00813-BJR- PAGE 4**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

recording date for the Deed of Trust. *Id*.   Real Time has recorded a Notice of Default ("NOD") indicating that Plaintiffs' second mortgage loan has not been paid off and Plaintiffs defaulted on the loan years ago. A true and correct copy of the NOD is attached hereto as **Exhibit E**. Real Time has noticed a Trustee's Sale currently set for October 1, 2021.  *See* Compl. ₱ 20.

### D.   Plaintiffs' Current Claims

On June 15, 2021, Plaintiffs filed the Complaint. Dkt. 1. Plaintiffs allege five claims against MERS for: alleged violation of Deed of Trust Act ("DTA") (claim three); for declaratory judgment (claim four); violation of the Washington Consumer Protection Act ("CPA") (claim five); for negligent mispresenation (claim six); and for negligence (claim seven). *Id., generally*.   Each of the claims as to MERS fail as a matter of law and MERS seeks dismissal with prejudice as to each and every claim.

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory, the absence of sufficient facts alleged under a cognizable legal theory, or both. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Dismissal under Rule 12(b)(6) is appropriate where the factual allegations do not raise the right to relief above mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id*. Indeed, the Supreme Court clarified after *Twombly* that "the tenet that a court must accept all of the allegations contained in [a pleading that states a claim for relief] is inapplicable to legal conclusions," and emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must show "more than the mere possibility of misconduct," and "only a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679; *see also Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1167 (W.D. Wash. 2011) (to survive a motion to dismiss,

"reasonable inferences from [non-conclusory factual content] must be plausibly suggestive of a claim entitling the pleader to relief").

Moreover, in ruling on a Rule 12(b)(6) motion, "the court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

## IV.    ARGUMENT

### A.    Plaintiffs Lack Standing To Challenge The Assignment Under The DTA

In Claim Three, Plaintiffs allege that MERS violated the DTA in assigning the Deed of Trust following the Reconveyance because the Deed of Trust "failed to exist." Compl. ⁋ 38.  Plaintiffs' DTA claim fails as a matter of law because it is based solely on MERS' purported assignment of the Deed of Trust, which Plaintiffs have no standing to challenge.

There is ample authority that borrowers, as strangers to the document, lack standing to challenge an assignment they did not sign. *Beck v. U.S. Bank Nat'l Ass'n*, CASE NO. C17-0882JLR, 12 (W.D. Wash. Dec. 14, 2017); *McPherson v. Homeward Residential*, 2014 WL 442378, *6 (W.D. Wash. 2014) ("recording of an assignment of a deed of trust does not affect a borrower's rights"); *Ukpoma v. Us. Bank, NA.*, 2013 WL 1934172, *4 (E.D. Wash. 2013) ("Plaintiff, as a third party, lacks standing to challenge" assignment) (citing cases); *Brodie v. Nw. Tr. Serv., Inc.*, 2012 WL 6192723, *2-3 (E.D. Wash. 2012) (borrower lacks standing to attack assignment because the borrower is not a party to it and thus cannot be injured by it), aff'd - Fed. Appx --, 2014 WL 2750123, *1 (9th Cir. 2014) ("Brodie lacks standing to challenge the assignment."). *See also*, RCW 65.08.120 (assignment does not affect borrower). A borrower cannot mount a challenge to the assignment unless a borrower has a genuine claim that they are at risk of paying the same debt twice if the assignment stands." *Borowski v. BNC*

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 2:21-
CV-00813-BJR- PAGE 6**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

*Mortg., Inc.*, No. C12-5867 RJB, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013); *see Lake v. MTGLQ Investors, LP*, No. C17-0495JLR, 2017 WL 383950, at *6 (W.D. Wash. Sept. 1, 2017) ("[The plaintiff] lacks standing to challenge the assignment of his deed of trust because he has not alleged that he is at a genuine risk of paying the same debt twice."); *Zhong v. Quality Loan Service Corp. of Wash.*, No. C13-0814JLR, 2013 WL 5530583, at *3 (W.D. Wash. Oct. 7, 2013) ("Ms. Zhong, as a borrower and third party to the transactions, lacks standing to challenge the Assignment and the Appointment.").

Here, Plaintiffs are not a party to the Assignment. *See* Ex. D.  As such, they are strangers to the Assignment and have no standing to challenge the Assignment to Real Time. Additionally, Plaintiffs do not allege (nor could they) that they actually paid the debt secured by the Deed of Trust.  *See* Compl., *generally*.  If they did not pay it off *once*, they cannot possibly be in danger of paying the same debt *twice*, which is a prerequisite to challenging any Assignment. *See Borowski*, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013).  Moreover, the recording of the Assignment in May 2020 did not cause Plaintiffs to default on their mortgage loan, which occurred years earlier. *See* Exs. D and E.

Even if the Assignment is deemed improper, which is denied, it is the possession of the promissory note with the power to enforce it that determines a beneficiary's standing, rather than any assignment of the deed of trust. *See, e.g., Myers v. Mortg. Elec. Registration Sys.*, No. 11-cv-05582 RBL, 2012 WL 678148, at *3 (W.D. Wash. Feb. 24, 2012) ("Even if MERS had improperly assigned the Deed, Flagstar is empowered as the beneficiary to appoint the trustee because it holds [plaintiff's] Note, not because of the assignment."); *Lynott v. Mortg. Elec. Registration Sys., Inc.*, No. 12-cv-5572-RBL, 2012 WL 5995053, at *2 (W.D. Wash. Nov. 30, 2012 ("U.S. Bank is the beneficiary of the Deed because it holds Plaintiffs Note, not because MERS assigned it the Deed."); *McPherson v. Homeward Residential*, No. Cl2-5920, 2014 WL 442378, at *5 (W.D. Wash. Feb. 4, 2014) (U.S. Bank had authority to enforce the Note and Deed of Trust, even absent a recorded assignment from Option One). Accordingly, Plaintiffs can't demonstrate that they have been damaged by the Assignment, as it is not what empowers the beneficiary to pursue a foreclosure under Washington law.

1 Under established precedent, Plaintiffs have no standing to challenge the Assignment and have

2 no damages arising from the Assignment. As a result, their DTA claim against MERS based solely on

3 the Assignment fails and should be dismissed.

4 **B. Plaintiffs' Declaratory Judgment Claim Fails Because MERS Has No Interest In**

5 **the Property**

6 In Claim Four, Plaintiffs assert they are entitled to a declaratory judgment to restrain the

7 foreclosure against their property because the Deed of Trust being foreclosed on was "extinguished."

8 *See* Compl. ¶¶ 44-45.  However, the claim fails as to MERS because MERS is not pursuing the

9 foreclosure.  MERS previously assigned any interest that it possessed under the Deed of Trust to Real

10 Time.

11 The Declaratory Judgment Act authorizes a court to issue a judgment declaring rights, status,

12 or other legal relations. To obtain such relief, a plaintiff must first present the court with a "justiciable

13 controversy." *Kitsap County v. Smith*, 143 Wash. App. 893, 902–03 (2008). The justiciable controversy

14 requirement prevents courts from delivering impermissible advisory opinions. *See To-Ro Trade Shows*

15 *v. Collins*, 144 Wn.2d 403, 416 (2001).

16 Here, Plaintiffs seek to enjoin the foreclosure against their property, but again, MERS assigned

17 any interest in had in the Deed of Trust via the Assignment. *See* Ex. D.  Moreover, the foreclosure is

18 being pursued by the co-defendants in this action, not MERS.  *See* Ex. E.  The undisputable fact that

19 MERS is not pursuing the foreclosure Plaintiffs seek to halt is fatal to the claim.

20 Based on Plaintiffs' own allegations and exhibits, MERS is not pursuing the foreclosure of the

21 property and has not current interest in the property.  Therefore, no controversy exists with MERS

22 regarding the pending foreclosure and the request for declaratory and injunctive relief as to MERS fails

23 as a matter of law.

24 **C. Plaintiffs Allege No Conduct of MERS That Is Actionable Under the CPA**

25 In Claim Five, Plaintiffs contend MERS violated the CPA by recording "[A]ssignments of Deed

26 of Trust…that directly conflict with each other."  *See* Compl. ¶ 49.  Plaintiffs appear to contend that

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 2:21-
CV-00813-BJR- PAGE 8**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1    "one reconveyed a mortgage lien" and the other purports to assign the same mortgage lien to another

2    entity. *Id*. Plaintiffs contend the conduct of MERS enabled the nonjudicial foreclosure, causing them

3    damages in the form of cloud of title, diminution of marketability, loss of equity, attorneys' fees and

4    costs in defending the foreclosure, and "above all" having to pay more than $120,000 to save the

5    property. *Id*., ¶ 55. However, Plaintiffs conflate MERS' roles in the subject documents, which make

6    clear that MERS did not engage in conflicting or contradictory conduct.

7            To state a claim under the Consumer Protection Act (RCW 19.86 et seq.), Plaintiffs must allege

8    facts supporting each of the following elements: (1) that defendants committed an unfair or deceptive

9    act or practice; (2) that the act or practice occurred in trade or commerce; (3) that there was an effect

10   on the public interest; (4) that Plaintiffs were injured in their business or property; and (5) that the

11   defendant's conduct was a proximate cause of the injury suffered. *See Hangman Ridge Training*

12   *Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 785 (1986). Plaintiffs fail to meet their pleading

13   burden as to MERS because MERS committed no unfair or deceptive act, nor has MERS caused

14   Plaintiffs any injuries.

15           Plaintiffs rely on the "Substitution of Trustee and Deed of Reconveyance," which were each

16   executed by different entities. *See* Ex. B. MERS executed the Substitution of Trustee **only**, and **not** the

17   Deed of Reconveyance. *Id*. Non-party Nationwide Title Clearing, Inc. executed the Deed of

18   Reconveyance. *Id*. MERS then later executed the Assignment of the Deed of Trust to Real Time. *See*

19   Ex. D. Plaintiffs' exhibits demonstrate that at no time did MERS execute a deed of reconveyance of

20   the Deed of Trust. *See generally*, Compl.

21           Plaintiffs offer conclusory allegations that MERS caused conflicting documents to be recorded,

22   but these allegations are easily refuted by consulting the plain language of these documents. Moreover,

23   as discussed *supra*, Plaintiffs lack standing to challenge the Assignment executed by MERS. Since

24   Plaintiffs fail to allege any actionable conduct by MERS in to support the CPA claim, the claim fails

25   and should be dismissed with prejudice.

26

1  Additionally, the CPA claim fails because Plaintiffs' alleged injuries were not proximately

2  caused by MERS. Plaintiffs do not dispute they defaulted on the loan, which was the "but for" cause

3  of their alleged injuries. *See, e.g.*, *Gelinas v. Bank of Am., NA*., No. 16–1355–RAJ, 2017 WL

4  1153859, at *5 (W.D. Wash. Mar. 28, 2017) ("Plaintiffs' failure to meet their debt obligation is the

5  'but for' cause of their purported damages. Therefore, any alleged damages cannot be attributed

6  to MERS."); *Babrauskas v. Paramount Equity Mortg*., No. C13–0494–RSL, 2013 WL 5743903, at *4

7  (W.D. Wash. Oct. 23, 2013) ("Any damage to plaintiff's credit, cloud on his title, or monetary effect

8  of the threat of foreclosure cannot be laid at MERS' door .... [P]laintiff's failure to meet his debt

9  obligations is the 'but for' cause of the default [and] foreclosure."). Moreover, MERS is not pursuing

10  the foreclosure of Plaintiffs' property.

11  Finally, as discussed in section 4.(A) above and incorporated herein, it is not the disputed

12  Assignment that empowers a beneficiary to pursue foreclosure under Washington law, but possession

13  of the note with the right to enforce. *See* §4.(A), *supra*. Accordingly, Plaintiffs' contention that the

14  Assignment "enabled" the foreclosure is contrary to law and without merit.

15  Based on the foregoing, since MERS did not proximately cause Plaintiffs' alleged injuries, the

16  CPA claim fails as a matter of law.

17  **D.   Plaintiffs' Negligent Misrepresentation Claim Fails Because MERS Did Not**

18  **Supply Conflicting Information**

19  In their claim for negligent misrepresentation, Plaintiffs contend that MERS "negligently

20  supplied conflicting information" to Plaintiffs and the public by signing two "Assignments of Deed

21  Trust" that directly conflict with each other. *See* Compl. ¶ 59.  Plaintiffs contend MERS executed two

22  documents: one that reconveyed a mortgage lien on Plaintiffs' property and the other document

23  purported to assign the mortgage lien. *Id*.  Plaintiffs further allege that MERS should have known that

24  entities such as Real Time and Trustee Corps would rely on MERS' information to commence

25  foreclosure. *Id*., ¶ 60. However, Plaintiffs' negligent misrepresentation is unsupported by Washington

26  law as set forth below.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 2:21-
CV-00813-BJR- PAGE 10**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1     A negligent misrepresentation claim requires Plaintiffs to establish six elements by clear and

2 convincing evidence: (1) the defendant supplied information for the guidance of others in their business

3 transactions that was false, (2) the defendant knew or should have known that the information was

4 supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining

5 or communicating the false information, (4) the plaintiff relied on the false information, (5) the

6 plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff

7 damages. *Ross v. Kirner*, 162 Wn.2d 493, 499–500 (2007).  A plaintiff must prove he or she justifiably

8 relied upon the information negligently supplied by the defendant. *Condor Enters., Inc. v. Boise*

9 *Cascade Corp.*, 71 Wash. App. 48, 52, 856 P.2d 713 (1993). The claim fails both because there is no

10 allegation that MERS supplied any false information and because Plaintiffs concede they were not the

11 party that relied on any alleged falsity.

12     Plaintiffs' negligent misrepresentation claim also fails for the same reason their CPA claim

13 fails: MERS did not execute the Deed of Reconveyance. *See* § IV(C), *supra.* Plaintiffs again misstate

14 the contents of the Reconveyance document, trying in vain to assign liability to MERS for conduct of

15 a non-party. Such pleading is improper and Plaintiffs cannot otherwise demonstrate "contradictory"

16 documents executed by MERS, leaving no basis for their Negligent Misrepresentation claim.

17     Moreover, even if there was any "contradiction" in the specific documents MERS actually

18 executed, the claim still fails because Plaintiffs fail to establish that **they relied** upon the information.

19 Rather, their claim is based on the alleged reliance of third parties on the information. *See* Compl. ¶ 60

20 ("entities such as RTR and Trustee Corps actively rely on MERS's information…"). Plaintiffs do not

21 allege beyond mere conclusory allegations how they relied on the reconveyance, which they only

22 appear to have first discovered with the 2020 title search. *Id.*, ¶ 15; *Steckman,* 143 F.3d at 1295-96

23 (courts are not required to accept as true conclusory allegations). Rather, Plaintiffs do not dispute that

24 they defaulted on the Loan, which is the actual proximate cause of the foreclosure, not any conduct of

25 MERS. *See* Compl., *generally*. Since Plaintiffs fail to demonstrate how they *themselves* relied on any

26 alleged conduct, the claim fails as a matter law. *Condor,* 71 Wash. App. At 52.

Based on these multiple fatal defects, the negligent misrepresentation claim should be dismissed with prejudice. *Ross,* 162 Wn.2d 499–500.

### E.      Plaintiffs' Negligence Claim Fails as a Matter of Law on Multiple Grounds

In claim seven, for negligence, Plaintiffs contend that MERS owed Plaintiffs a duty of care not to record documents that were false, misleading or conflicting with one another. *See* Compl. ¶ 69. Plaintiffs contend that due to MERS' negligence, they are insecure about the title status of their property, suffered a diminution of value of the property and their credit standing, but above all, have to pay $120,000 to save the property from foreclosure. *Id.*, ¶ 70.  However, Plaintiffs' negligence claim fails under Washington law. MERS does not owe Plaintiffs the duty alleged in the Complaint.

To prove actionable negligence, a plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury. *Ward v. Bank of Am.*, CASE NO. 2:19-cv-00185, 5 (W.D. Wash. May. 14, 2019) (citing *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash.2d 468, 474 (1998)). The existence of a duty is a question of law. *Id.* The burden of establishing a duty belongs to the plaintiff. *Jackson v. City of Seattle*, 158 Wash. App. 647, 652, 244 P.3d 425, 428 (2010).  In Washington, a  borrower is not owed a fiduciary duty arising from an arms-length transaction.  *Johnson v. JP Morgan Chase Bank N.A.*, No. 14–5607 RJB, 2015 WL 4743918 at *8 (W.D. Wash. Aug. 11, 2015).

MERS' role under the Deed of Trust is as designated nominee for the original lender. *See* Ex. A (Deed of Trust). Since no duty is owed by the lender arising from an arms-length lending transaction under Washington law, no duty is owed to Plaintiffs by MERS, solely as nominee for the original lender.  *See Bain v. OneWest Bank, F.S.B.*, No. C09-0149-JCC, 2011 WL 917385, at *5 (W.D. Wash. Mar. 15, 2011) (finding no duty owed by MERS in its role as beneficiary of the deed of trust).

Plaintiffs' contention to the contrary that "every individual owes a duty of reasonable care to refrain from causing foreseeable harm in his interactions with others" is refuted by binding Washington precedent finding MERS owed no duty.  *See* Compl. ¶ 69; *Bain*, 2011 WL 917385, at *5.  Aside from conclusory allegations, Plaintiffs offer nothing to show why MERS owed them a duty to not record

allegedly false information. The traditional purpose of a recording statute is to protect subsequent purchasers from secret conveyances and encumbrances. *Daviscourt v. Quality Loan Servs. Corp. of Washington*, 200 Wash. App. 1026 (2017) (citing WASHINGTON PRACTICE REAL ESTATE: TRANSACTIONS § 14.5, at 126-27 (2d ed. 2004 & Supp. 2017); 1 JOYCE PALOMAR, PATTON AND PALOMAR ON LAND TITLES § 12, at 57-58 (3d ed. 2003)). It "is more likely that the **duty stemming from recording documents would be owed to subsequent purchasers, not the original parties to a transaction**," like the Plaintiffs herein. *Id*. (emphasis added). As the Washington Supreme Court has explained, "[w]hen no independent tort duty exists, tort does not provide a remedy." *Eastwood v. Horse Harbor Found., Inc*., 170 Wn. 2d 380, 389, 241 P.3d 1256 (2010).

Courts throughout the Ninth Circuit routinely find MERS owed no duty to borrowers based on in its role under security instruments. *See, e.g., Bell v. FDIC*, 2010 U.S. Dist. LEXIS 82463, 2010 WL 3211960 (W.D. Wash. Aug. 9, 2010) (dismissing claim in finding MERS owed no fiduciary duty); *Longnecker v. Nationstar Mortg. LLC*, No. C16-0093RSM, 2016 WL 865353, at *3 (W.D. Wash. Mar. 7, 2016) (finding MERS owed no fiduciary duty and claim was contrary to law); *Rundgren v. Bank of New York Mellon*, No. CIV 10-00252 JMS/LEK, 2010 WL 4066878, at *8 (D. Haw. Oct. 14, 2010) (MERS does not owe a duty to Plaintiff because she had no "confidential or trust relationship" with MERS.); *Gzell v. Novastar Mortgage, Inc*., 2010 WL 3293537, at * 10 (E.D.Cal. Aug.19, 2010) (finding no actionable duty to impose liability on MERS arising from "an arms-length loan transaction"); *Mulato v. WMC Mortg. Corp.,* 2010 WL 1532276, at *2 (N.D. Cal. Apr. 16, 2010) (dismissing negligence claim against MERS where plaintiff failed to plead facts to show that MERS exceeded its traditional role to support a duty).

Since MERS owed no duty to Plaintiffs under the Deed of Trust, and Plaintiffs cannot demonstrate any independent duty created, the negligence claim fails as a matter of law and should be dismissed with prejudice.

//

//

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 2:21-CV-00813-BJR- PAGE 13**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## V.    CONCLUSION

For all of the foregoing reasons, MERS respectfully requests that this Court grant this Motion to Dismiss with prejudice in favor of MERS.

DATED:  August 20, 2021.


HOLLAND & KNIGHT LLP

*s/ Nellie Q. Barnard*
Nellie Q. Barnard, WSBA No. 50587
E-mail:  nellie.barnard@hklaw.com
601 S.W. Second Ave., Suite 1800
Portland, OR 97204
Telephone:  503.243.2300/Fax:  503.241.8014

*Attorneys for Mortgage Electronic Registration Systems, Inc*

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 2:21-CV-00813-BJR- PAGE 14**

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that a true and correct copy of the foregoing documents was served by the

3

Court's CM/ECF system to all counsel of record on this 20th day of August, 2021.

4

5

                                        _s/ Nellie Q. Barnard_
                                        Nellie Q. Barnard

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – PAGE 1

#150074116_v5

# Exhibit A

After Recording Return To:
LIBERTY FINANCIAL GROUP, INC
205 108TH AVENUE NE #270, POST CLOSING
BELLEVUE, WASHINGTON 98004
Loan Number: 11120718



200703010001246

FIRST AMERICAN DT          45.00
PAGE001 OF 013
03/01/2007 13:22
KING COUNTY, WA

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** 100237600000820753

Grantor(s) (Last name first, then first name and initials):
1. MONROY, ALBERTO RIVERA
2. PARRA-RIVERA, IRMA
3.
4.
5.
6.
☐ Additional names on page          of document.

Grantee(s) (Last name first, then first name and initials):
1. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS)
2.
3.
4.
5.
6.
☐ Additional names on page          of document.

Legal Description (abbreviated: i.e., lot, block, plat or section, township, range):
LOT 57, BELMONT WOODS DIV. II, VOL. 172, P. 77-85.

Full legal description on page    2    of document.

Assessor's Property Tax Parcel(s) or Account Number(s): 070571-0570-02

Reference Number(s) Assigned or Released:

☐ Additional references on page          of document.

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 1 of 9          DocMagic eForms 800-649-1362
www.docmagic.com

THIS DEED OF TRUST is made this 27th day of FEBRUARY  2007            , among
the Grantor,  ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA,
HUSBAND AND WIFE

(herein "Borrower"),
FIRST AMERICAN TITLE INSURANCE COMPANY 2101 FOURTH AVE
SUITE 800, SEATTLE, WASHINGTON 98121          (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
tel. (888) 679-MERS.
LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
is organized and existing under the laws of WASHINGTON          and has an address of
205 108TH AVENUE NE, #270, BELLEVUE, WASHINGTON 98004

(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the County of  KING            , State of Washington:
LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT
THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH
85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE
COUNTY OF KING, STATE OF WASHINGTON.
A.P.N.: 070571-0570-02

THIS SECURITY INSTRUMENT IS SECOND AND SUBORDINATE TO A
FIRST LIEN RECORDING CONCURRENTLY.
which has the address of 23829 SE 248TH STREET
[Street]

MAPLE VALLEY            , Washington   98038        (herein "Property Address");
[City]                                [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to
collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered
by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this
Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and
agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if
necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and
assigns), has the right:  to exercise any or all of those interests, including, but not limited to, the right to
foreclose and sell the Property; and to take any action required of Lender including, but not limited to,
releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated FEBRUARY 27, 2007 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 79,600.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MARCH 1, 2022 ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 3 of 9          DocMagic *eForms* 800-649-1362
*www.docmagic.com*

or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

    **3.   Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

    **4.   Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

    **5.   Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

    The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

    If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

    **6.   Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold.  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

    **7.   Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.  If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

    Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof.  Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS        Page 4 of 9        *DocMagic eForms* 800-649-1362
www.docmagic.com

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 5 of 9          DocMagic *eForms* 800-649-1362
www.docmagic.com

Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.  **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust.  However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

17.  **Acceleration; Remedies.**  Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property at public auction at a date not less than 120 days in the future.  The notice shall further inform Borrower of (i) the right to reinstate after acceleration, (ii) the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure, and (iii) any other matters required to be included in such notice by applicable law.  If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee and Lender take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require.  After the lapse of such time as may be required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine.  Trustee may postpone sale of the Property for a period or periods not exceeding a total of 30 days by public announcement at the time and place fixed in the notice of sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto, or to the Clerk of the Superior Court of the County in which the sale took place.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the tenth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would then be due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continued unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**21. Substitute Trustee.** In accordance with applicable law, Lender may, from time to time, appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Use of Property.** The Property is not used principally for agricultural or farming purposes.

**23. The following Riders are to be executed by Borrower.** [check box as applicable:]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 7 of 9          DocMagic *eForms* 800-649-1362
www.docmagic.com

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 8 of this Deed of Trust.

_____ (Seal)
ALBERTO RIVERA MONROY  -Borrower

_RIVERA PARRA IRMA_ _____ (Seal)
IRMA PARRA-RIVERA        -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:

Witness:

_____

_____

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS            Page 8 of 9

DocMagic *eFORMS* 800-649-1362
www.docmagic.com

State of Washington                         )
County of KING                              )

On this day personally appeared before me   ALBERTO RIVERA MONROY AND IRMA
PARRA-RIVERA

, to me known to be the individual or
individuals described in and who executed the within and foregoing instrument, and acknowledged that
he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein
mentioned.

Given under my hand and official seal this  28  day  February 2007

Notary Public in and for the State of Washington,
residing at: Ravensdale.

My commission expires: 2/11/10

WASHINGTON-SECOND MORTGAGE
Form 3848 - AS AMENDED FOR MERS          Page 9 of 9          DocMagic eForms 800-649-1362
www.docmagic.com

Loan Number: 0718

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 27th day of FEBRUARY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

BELMONT WOODS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

    (i)  Lender waives the provision in the Uniform Covenant 2 for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property; and

    (ii)  Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are

---

MULTISTATE PUD RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3150 9/90

Page 1 of 3

*DocMagic* ☎*Forms* 800-649-1362
*www.docmagic.com*

hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

    **C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

    **D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

    **E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

        (i)    the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

        (ii)   any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

        (iii)  termination of professional management and assumption of self-management of the Owners Association; or

        (iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3150  9/90             Page 2 of 3             *DocMagic* ☎ *eForms* 800-649-1362
*www.docmagic.com*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.


_____ (Seal)
ALBERTO RIVERA MONROY -Borrower

_____ (Seal)
IRMA PARRA-RIVERA            -Borrower


_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MIN: 100237600000820753        Loan Number: 0718

# BALLOON RIDER
# SECOND MORTGAGE

This Balloon Rider is made this   27th   day of FEBRUARY, 2007      and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at 23829 SE 248TH STREET, MAPLE VALLEY, WASHINGTON 98038

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)
ALBERTO RIVERA MONROY -Borrower

_RIVERA PARRA IRMA_ (Seal)
IRMA PARRA-RIVERA     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

BALLOON RIDER SECOND MORTGAGE
FORM 651  10/21/04

DocMagic *eForms* 800-649-1362
www.docmagic.com

Exhibit B

Return to:
Central Mortgage Company
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



200906030001231
NATIONWIDE TIT AST
PAGE001 OF 002          57.00
08/03/2009 12:11
KING COUNTY, WA

Loan#: 0999906014

## SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

**WHEREAS, MEAGAN EVANS** was the original Trustor, **JOAN H ANDERSON** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 02/24/2004 in KING County, Washington, under Doc No: 20070301001246 or Book page ;   WHEREAS, the undersigned Beneficiary is the present Beneficiary under said Deed of Trust and WHEREAS, the undersigned desires to substitute a new Trustee under Deed of Trust in place and stead of said original Trustee thereunder.

NOW, THEREFORE, the undersigned hereby substitutes **NATIONWIDE TITLE CLEARING, INC.**, a Washington State corporation, as Trustee under said Deed of Trust.

**Dated: 04/23/2009**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR NEIGHBORHOOD MORTGAGE INC

BY:

CRYSTAL MOORE     VICE PRESIDENT

STATE OF FLORIDA     COUNTY OF PINELLAS
Before me, a Notary Public, in and for said State and County aforesaid, personally appeared CRYSTAL MOORE with whom I am personally acquainted, and who, upon oath, acknowledged him/herself to be the VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR NEIGHBORHOOD MORTGAGE INC the within bargainor, and that he/she, as such corporate officer, being authorized to do so, executed the within instrument for the purposes therein contained by signing the name of the corporation thereto as such VICE PRESIDENT.
WITNESS my hand and official seal at office in said county THIS 23RD DAY OF APRIL IN THE YEAR 2009

BRYAN J. BLY
Notary Public/Commission expires 07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691056
Expires July 01, 2011
Bonded Through National Notary Assn.

WHEREAS, MEAGAN EVANS was the original Trustor, **JOAN H ANDERSON** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 02/24/2004 in KING County, Washington, under Doc No: 20070301001246 or Book page ;

NATIONWIDE TITLE CLEARING, INC., as successor Trustee under said Deed of Trust and as successor Trustee, having received from the Beneficiary under said Deed of Trust a written request to reconvey, reciting that the obligation(s) secured by the Deed of Trust have been fully satisfied, does hereby grant, bargain, sell and reconvey, unto the parties entitled thereto all right, title and interest which was heretofore acquired by said Trustee under said Deed of Trust.

**Dated: 04/23/2009**
**NATIONWIDE TITLE CLEARING, INC.**

BY:
DHURATA DOKO     VICE PRESIDENT

form1/RCNWA1

Page 2

Loan#: 0999906014

### SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

STATE OF FLORIDA
COUNTY OF PINELLAS

On 04/23/2009  before me, THE UNDERSIGNED, Notary Public, personally appeared DHURATA DOKO
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity,
and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed the
same.

WITNESS MY hand and official seal.

_____
Notary Public

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

Prepared By: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

CMCRC 9741594 ARY2106745   100052599990601490 MERS PHONE 1-888-679-MERS form1/RCNWA1

*9741594*

Exhibit C

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3



**20040301001246**
PACIFIC NW TIT DT
PAGE001 OF 016            35.00
03/01/2004 12:50
KING COUNTY, WA

Assessor's Parcel or Account Number 923940-0120-01
Abbreviated Legal Description Unit 104, Bldg B, Wellington
Townhomes, a condo V 149 Pg 30.42
[Include lot, block and plat or section, township and range]
Full legal description located on page_____11

FILED BY FNWT
14135
PNWT 5586484

Escrow No.: 22046492
V1 WBCD LOAN # 999906014
-----------------[Space Above This Line For Recording Data]-----------------

## DEED OF TRUST

| MIN 100052599990601490 |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document
are also provided in Section 16
**(A) "Security Instrument"** means this document, which is dated **FEBRUARY 24, 2004,**
together with all Riders to this document
**(B) "Borrower"** is **MEAGAN EVANS AN Unmarried Womanv AS HER SOLE & SEPARATE
PROPERTY.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **NEIGHBORHOOD MORTGAGE INC.**

Lender is a **CORPORATION,**                        organized and existing under the
laws of **WASHINGTON.**                                  Lender's address is
**2305 OLYMPIA AVE NE, RENTON, WA  98056.**

                                                   Initials: _____

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3048 1/01
© 1999-2002 Online Documents, Inc         **Page 1 of 11**
02-20-2004 17:59                                         WAEDEED   0211

Unofficial Copy

V1 WBCD LOAN # 999906014

**(D)** "**Trustee**" IS JOAN H. ANDERSON, EVP ON BEHALF OF FLAGSTAR BANK, FSB.

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the beneficiary under this Security Instrument**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

**(F)** "**Note**" means the promissory note signed by Borrower and dated FEBRUARY 24, 2004. The Note states that Borrower owes Lender ****ONE HUNDRED FORTY THOUSAND AND NO/100 *********************************************************************** Dollars (U.S   $140,000.00   ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2034.

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property "

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

[x] Adjustable Rate Rider   [x] Condominium Rider   [ ] Second Home Rider
[ ] Balloon Rider   [ ] Planned Unit Development Rider   [ ] Other(s) [specify]
[ ] 1-4 Family Rider   [ ] Biweekly Payment Rider

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq ) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender. (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and

Initials: [signature]

WASHINGTON–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3048 1/01
© 1999-2002 Online Documents, Inc            **Page 2 of 11**                          WAEDEED
02-20-2004 17:59

V1 WBCD LOAN # 999906014

the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY
[Type of Recording Jurisdiction] of  King                                      [Name of Recording Jurisdiction]
Unit 104, Building B, Wellington Townhomes, A condominium, according to the Condominium Declaration recorded under Recording Number 9806051970, and amendments thereto, if any, and in Volume 149 of Condominiums, pages 30 through 42, inclusive, in King County, Washington.
APN #: 923940-0120-01

which currently has the address of  23501 62nd Ave S  #B104, Kent,
                                                                                                    [Street] [City]
Washington    98032              ("Property Address").
                  [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right. to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

    UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows
    1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U S. currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender· (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

    2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

Initials: ____

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3048 1/01
© 1999-2002 Online Documents, Inc          **Page 3 of 11**
02-20-2004 17:59                                                                                      WAEDEED

V1 WBCD LOAN # 999906014

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner

Initials: ___

WASHINGTON--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3048 1/01
© 1999-2002 Online Documents, Inc.                    **Page 4 of 11**                                WAEDEED
**02-20-2004 17:59**

V1 WBCD LOAN # 999906014

acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

WASHINGTON--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       Form 3048 1/01       Initials: _____
© 1999-2002 Online Documents, Inc.            **Page 5 of 11**                                        WAEDEED
02-20-2004  17:59

V1 WBCD LOAN # 999906014

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/ or repairing the Property  Lender's actions can include, but are not limited to. (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender

V1 WBCD LOAN # 999906014

requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums

V1 WBCD LOAN # 999906014

secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender

Initials: [handwritten]

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3048 1/01
© 1999-2002 Online Documents, Inc                **Page 8 of 11**                                                  WAEDEED
02-20-2004 17:59

V1 WBCD LOAN # 999906014

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender· (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable law provides

Initials:

V1 WBCD LOAN # 999906014

a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances. gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows.

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

Initials:

**V1 WBCD LOAN # 999906014**

evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument  The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MEAGAN EVANS

State of **WASHINGTON**                                      County of **KING** SS:

On this day personally appeared before me _MEAGAN    EVANS_

_____

to me known to be the individual _____ described in and who executed the within and foregoing instrument, and acknowledged that ____ signed the same as ____ free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _24_ day of _FEBRUARY_ _2004_.

Notary Public in and for the State of Washington, residing at _King Co._

My Appointment Expires on: _10-9-08_.

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3048 1/01
© 1999-2002 Online Documents, Inc            **Page 11 of 11**                    WAEDEED
02-20-2004 17:59

Unofficial Copy

V1 WBCD LOAN # 999906014
MIN: 100052599990601490

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this **24TH** day of **FEBRUARY, 2004,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **NEIGHBORHOOD MORTGAGE INC, A WASHINGTON CORPORATION**

("Lender")
of the same date and covering the property described in the Security Instrument and located at:  **23501 62nd Ave S  #B104**
 **Kent, WA 98032.**

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of **4.875%**. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the **1ST** day of **APRIL, 2009,** and the adjustable interest rate I will pay may change on that day every **12TH** month thereafter  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date "

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal.** The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND SEVEN-EIGHTHS** percentage point(s) ( **2.875%** ) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **6.875%** or less than **2.875%.**  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000%** ) from the rate

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01                                                     Initials: ___
© 2001-2002 Online Documents, Inc          **Page 1 of 3**                    F3187RDU  0208
                                                          **02-20-2004 17:59**

of interest I have been paying for the preceding   12   month(s). My interest rate will never be greater than   10.875%   which is called the "Maximum Rate."

`V1 WBCD LOAN # 999906014`

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1   Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

2.   When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if. (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01

Initials:

© 2001-2002 Online Documents, Inc                       **Page 2 of 3**

F3187RDU

`02-20-2004 17:59`

**V1 WBCD LOAN # 999906014**

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____          _____
**MEAGAN EVANS**                                                      Date

*Unofficial Copy*

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR-Single Family-Fannie Mae Uniform Instrument
Form 3187 6/01
© 2001-2002 Online Documents, Inc            **Page 3 of 3**                    F3187RDU
                                                                          **02-20-2004 17:59**

V1 WBCD LOAN # 999906014
MIN #: 100052599990601490

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **24TH** day of **FEBRUARY, 2004** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **NEIGHBORHOOD MORTGAGE INC, A WASHINGTON CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at. **23501 62nd Ave S   #B104, Kent, WA 98032.**

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as· **KENT**

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows·

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents The "Constituent Documents" are the. (i) Declaration or any other document which creates the Condominium Project, (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

Initials:

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
© 1999-2002 Online Documents, Inc       **Page 1 of 2**       F3140RDU  0205
02-20-2004 17:59

V1 WBCD LOAN # 999906014

**E.  Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)
MEAGAN  EVANS

**MULTISTATE CONDOMINIUM RIDER--**Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3140 1/01
© 1999-2002 Online Documents, Inc          **Page 2 of 2**                          F3140RDU
02-20-2004  17:59

Exhibit D

Case 2:20-cv-00614-BJR  Document 16  Filed 08/20/21  Page 51 of 68

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Real Time Resolutions, Inc.
PO Box 36655
Dallas, TX 75235-9833

| | |
|---|---|
| TS No: WA08000298-19-1 | MIN No: 100237600000820753 |
| TO No.: 191299809-WA-MSI | MERS Phone: 888-679-6377 |
| APN 070571057002 | MERS Address:  P.O. Box 2026, Flint, MI 48501-2026 |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns hereby grants, assigns, and transfers to **Real Time Resolutions, Inc.**, whose address is PO Box 36655, Dallas, TX 75235-9833 all its interest under that certain Deed of Trust dated February 27, 2007, executed by ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE as Trustor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY as Trustee and recorded on March 1, 2007 as Instrument No. 20070301001246 of official records, in the Office of the County Recorder of King County, Washington.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein, commonly known as 23829 SE 248TH STREET, MAPLE VALLEY, WA 98038 and more fully described as follows: **LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.**

Dated: ___5/12/20___

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns

_____
SHAUNA BOEDEKER, VICE PRESIDENT

State of Texas
County of Dallas

On ___5/12/20_____, before me,  JASMIN MORENO, a Notary Public in and for Dallas in the State of Texas,  personally appeared  SHAUNA BOEDEKER, VICE PRESIDENT ,personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
JASMIN MORENO
Notary Expires: 09/10/2022
(This are for notorial seal)



JASMIN MORENO
My Notary ID # 131715198
Expires September 10, 2022

Exhibit E

Servicer: Real Time Resolutions, Inc.                                    Referral Date: **01/06/2020**

## MTC Financial Inc. dba Trustee Corps
606 W. Gowe Street, Kent WA 98032-5744
Tel: (206) 467-3134 Fax: (206) 467-4025

April 19, 2021

To:     In Source Logic
        3571 Red Rock Street, Unit C
        Las Vegas, NV 89103

TS No:                  WA08000298-19-1
APN No:                 070571057002
Property Address:       23829 SE 248TH STREET, MAPLE VALLEY, WA 98038
Property County:        King
**Loan Type:**          **Conventional**

## REQUEST FOR SERVICES

Enclosed herewith please find a copy of the Notice of Default.

X    PLEASE **POST** the Notice of Default in a conspicuous place on the premises, or personally serve
     on the borrower and grantor

Comments:    PLEASE EMAIL CONFIRMATION as soon as possible
             Ryan Watkins at rwatkins@trusteecorps.com

Please telephone immediately at 206.467.3134 if you have any questions about the services requested.

Thank you.

Ryan Watkins
206.467.3134



TS No WA08000298-19-1          APN 070571057002          TO No 191299809-WA-MSI

### NOTICE OF DEFAULT
### PURSUANT TO THE REVISED CODE OF WASHINGTON
### CHAPTER 61.24, ET. SEQ.

To: **ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE**

Current Beneficiary:          **Real Time Resolutions, Inc.**
Current Mortgage Servicer:    **Real Time Resolutions, Inc.**
Current Trustee:              **MTC Financial Inc. dba Trustee Corps**

### THIS NOTICE IS ONE STEP IN A PROCESS
### THAT COULD RESULT IN YOUR LOSING YOUR HOME

You may be eligible for mediation in front of a neutral third party to help save your home.

**CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might benefit.  Mediation **MUST** be requested between the time you receive the Notice of Default and no later than twenty days after the Notice of Trustee Sale is recorded.

**DO NOT DELAY.**  If you do nothing, a notice of sale may be issued as soon as 30 days from the date of this notice of default.  The notice of sale will provide a minimum of 120 days' notice of the date of the actual foreclosure sale.

**BE CAREFUL** of people who claim they can help you.  There are many individuals and businesses that prey upon borrowers in distress.

**REFER TO THE CONTACTS BELOW** for sources of assistance.

### SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission:
Telephone: (877) 894-4663 or (800) 606-4819   Website: www.wshfc.org

The United States Department of Housing and Urban Development:
Telephone: (800) 569-4287       Website: www.hud.gov

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys:
Telephone: (800) 606-4819       Website: www.homeownership.wa.gov

**1.** DEFAULT AND PROPERTY DESCRIPTION:

You are hereby notified that the Beneficiary has declared you in default on the obligation secured by a Deed of Trust dated February 27, 2007, executed by ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL

TS No WA08000298-19-1          APN 070571057002          TO No 191299809-WA-MSI

GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns, recorded March 1, 2007 as Instrument No. 20070301001246 and the beneficial interest was assigned to **Real Time Resolutions, Inc.** and recorded May 12, 2020 as Instrument Number 20200512000681 of official records in the Office of the Recorder of King County, Washington, and which Deed of Trust encumbers the following described real property:

**LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.**

APN: **070571057002**

The postal address of which is more commonly known as: **23829 SE 248TH STREET, MAPLE VALLEY, WA 98038**

**2.** CONTACT INFORMATION FOR HOLDER OF PROMISSORY NOTE AND LOAN SERVICER:

a. Name and address of the holder of any Promissory Note or other obligation(s) secured by the Deed of Trust:

Beneficiary/Noteholder: Real Time Resolutions, Inc.
c/o Real Time Resolutions, Inc.
PO Box 36655
Dallas, TX 75235-9833

b. Name, address and telephone number of a party acting as a servicer of the obligations secured by the Deed of Trust:

Servicer: Real Time Resolutions, Inc.
PO Box 36655
Dallas, TX 75235-9833
Phone No: 877-252-3761

**3.** STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:

a. The current Beneficiary, **Real Time Resolutions, Inc.,** alleges that you are in default for the following reason(s): **Failed to pay payments which became due**

| Due from 06/01/2009 through 04/19/2021 as follows: | |
|---|---|
| 143 monthly payment(s) at $834.13 | $119,280.59 |
| Late Charges due from 06/01/2009 through 04/19/2021 | $4,666.39 |
| **TOTAL MONTHLY PAYMENTS AND LATE CHARGES DUE:** | **$123,946.98** |

**4.** OTHER CHARGES, COSTS AND FEES:

In addition to the amount in arrears specified above, you are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before the recording of the Notice of Trustee's Sale:

| | |
|---|---|
| Trustee's Fee: | $1,350.00 |
| Trustees Sale Guarantee: | $613.26 |
| BPO: | $95.00 |
| PROPERTY INSPECTION: | $15.00 |



TS No WA08000298-19-1                 APN 070571057002                 TO No 191299809-WA-MSI

FDCPA MAILINGS:                                                                                    $1.48

TOTAL CHARGES, FEES AND COSTS:                                            $2,074.74

5. REINSTATEMENT              IMPORTANT!  PLEASE READ!

a. The estimated amount necessary to reinstate your Deed of Trust and the obligation secured thereby before the recording of the Notice of Trustee's Sale is the sum of paragraphs 3 and 4 above in the estimated amount of **$126,021.72** PLUS the amount of any monthly payments, late charges and advances which may fall due after the date of this Notice of Default.

b. In the event you tender reinstatement before the recording of the Notice of Trustee's Sale, you must be sure to add the amount shown above to any monthly payments and/or late charges, if any, which fall due after the date of this Notice of Default.

c. Because some of the stated costs are continuing and can only be estimated at this time, or because the amount necessary to reinstate your loan may include presently unknown expenditures required to preserve the property, or to comply with state or local laws, it is necessary that you contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.  Payment must be in the full amount by cashier's check, and mailed to the undersigned.  Personal checks will not be accepted.

d. If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to cure the Deed of Trust and the obligation secured thereby before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

e. The Notice of Trustee's Sale may be recorded after thirty (30) days from the date this notice is mailed and served upon you or posted upon the premises, whichever occurs latest.

**For Reinstatement/Pay Off Quotes, contact MTC Financial Inc. DBA Trustee Corps**

Reinstatement/Pay off monies in the form of a cashier's check may be tendered to:

**MTC Financial Inc. dba Trustee Corps**
**ATTN: REINSTATEMENT/PAYOFF DEPT**
**606 W. Gowe Street**
**Kent, WA 98032-5744**
**Toll Free Number: (844) 367-8456**
**TDD: (800) 833-6388**

6. CONSEQUENCES OF DEFAULT:

a. Failure to cure said alleged default(s) within thirty days of the date of mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recording, transmittal and publication of a Notice of Trustee's Sale, and the property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future, or no less than one hundred fifty days in the future if Borrower received a letter under RCW 61.24.031.

b. The effect of the recording, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the property described herein for sale.

c. If the default(s) described above is/are not cured on or before the 11th day prior to a Trustee's

TS No WA08000298-19-1             APN 070571057002             TO No 191299809-WA-MSI

Sale date, which may hereafter be set, the entire principal balance owing on that obligation secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest as well as costs of foreclosure, shall be immediately due and payable.

d.  The effect of a Trustee's Sale of the above described property by the Trustee will be to deprive you, or your successor in interest, and all of those whom hold by, through or under you of all of your or their interest in the property described in paragraph 1 above and satisfy the obligation secured by the above Deed of Trust.

## 7. RECOURSE TO COURTS:

The borrower, grantor, and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

## 8. COMPLIANCE WITH RCW 61.24.031 AND RCW 61.24.163, IF APPLICABLE:

For owner-occupied residential real property, before the notice of the Trustee's sale is recorded, transmitted, or served, the Beneficiary has complied with RCW 61.24.031 and, if applicable, RCW 61.24.163.

Dated: __4/19/2021__          MTC Financial Inc. dba Trustee Corps, as Duly Appointed Successor Trustee

By: Alan Burton, Vice President
Phone: (844) 367-8456

Trustee Corps may be considered a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**



## DECLARATION OF OWNERSHIP

Borrower Name:     ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE

Property Address:   23829 SE 248TH STREET, MAPLE VALLEY, WA 98038

TS Number:          WA08000298-19-1

Under Penalty of Perjury, the Undersigned hereby represents and declares as follows:

1. I am employed as ___Senior Vice President_____ of Real Time Resolutions, Inc..  I am duly authorized to make this declaration on behalf of Real Time Resolutions, Inc..

2. Real Time Resolutions, Inc. is the holder of the Promissory Note ("Note") secured by a certain Deed of Trust encumbering the above referenced property.

3. The Note has not been assigned or transferred to any other person or entity.

4. Beneficiary understands that the Trustee foreclosing the Deed of Trust will rely upon this Declaration before issuing the Notice of Trustee Sale.

Dated __7-17-20_____

Real Time Resolutions, Inc.

_Wesley Owens_____

By: Wesley Owens

Its: Senior Vice President

# FORECLOSURE LOSS MITIGATION FORM

Trustee Sale No:   **WA08000298-19-1**
Borrower(s):   **ALBERTO RIVERA MONROY**
**IRMA PARRA-RIVERA**

Subject Property:   **23829 SE 248TH STREET, MAPLE VALLEY, WA 98038**

Please select applicable option(s) below.

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that [check the applicable box and fill in any blanks so that the beneficiary, authorized agent, or trustee can insert, on the beneficiary's behalf, the applicable declaration in the notice of default required under 61.24 RCW]:

(1) ☒ The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, RCW 61.24.031 (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure") and the borrower responded but did not request a meeting.

(2) ☐ The Beneficiary or Beneficiary's authorized agent has contacted the borrower as required under RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was held on _____ in compliance with RCW 61.24.031.

(3) ☐ The beneficiary or beneficiary's authorized agent has contacted the borrower as required in RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was scheduled for _____ and neither the borrower nor the borrower's designated representative appeared.

(4) ☐ The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 61.24.031(5) and the borrower did not respond.

(5) ☐ The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.

This declaration is made for the purpose of inducing trustee to prepare, record, and post a Notice of Sale under the Deed of Trust in which the undersigned has an interest knowing that the Trustee will rely upon the truth and accuracy of the statements contained herein preparing, recording, and posting the Notice of Sale.

Dated:   _June 29th, 2020_

By:   _____

Name/Title:   **David Rosas, Director of Loss Mitigation**

Company:   **Real Time Resolutions, Inc.**



Instrument Number: 20200512000681  Document:ADT Rec: $18.00 Page-1 of 1
Record Date:5/12/2020 1:14 PM
Electronically Recorded  King County, WA

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Real Time Resolutions, Inc.
PO Box 36655
Dallas, TX 75235-9833

TS No: WA08000298-19-1                                MIN No: 100237600000820763
TO No.: 191299809-WA-MSI                              MERS Phone: 888-679-6377
APN 070571057002                          MERS Address: P.O. Box 2026, Flint, MI 48501-2026

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for
LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its
successors and assigns hereby grants, assigns, and transfers to Real Time Resolutions, Inc., whose address is PO
Box 36655, Dallas, TX 75235-9833 all its interest under that certain Deed of Trust dated February 27, 2007, executed
by ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE as Trustor(s), to FIRST
AMERICAN TITLE INSURANCE COMPANY as Trustee and recorded on March 1, 2007 as Instrument No.
20070301001246 of official records, in the Office of the County Recorder of King County, Washington.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the
real property described therein, commonly known as 23829 SE 248TH STREET, MAPLE VALLEY, WA 98038 and
more fully described as follows: LOT(S) 57, BELMONT WOODS, DIVISION II, ACCORDING TO THE PLAT
THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY,
WASHINGTON, SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

Dated:  5/12/20

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as
designated nominee for LIBERTY FINANCIAL GROUP, INC, A
WASHINGTON CORPORATION, Beneficiary of the security
instrument, its successors and assigns

SHAUNA BOEDEKER, VICE PRESIDENT

State of Texas
County of Dallas

On 5/12/20                  , before me, JASMIN MORENO, a Notary Public in and for Dallas in
the State of Texas, personally appeared  SHAUNA BOEDEKER, VICE PRESIDENT ,personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

JASMIN MORENO
Notary Expires: 09/10/2022
(This are for notarial seal)

JASMIN MORENO
My Notary ID # 131715190
Expires September 10, 2022

RECORDING REQUESTED BY:


WHEN RECORDED MAIL TO:

Trustee Corps
606 W. Gowe Street
Kent, WA 98032-5744


TS No WA08000298-19-1

TO No 191299809-WA-MSI

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

Grantor:   **ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE**
Current Beneficiary of the Deed of Trust:  **Real Time Resolutions, Inc.**
Original Trustee of the Deed of Trust:  **FIRST AMERICAN TITLE INSURANCE COMPANY**
Current Trustee of the Deed of Trust:   **MTC Financial Inc. dba Trustee Corps**
Current Mortgage Servicer of the Deed of Trust:   **Real Time Resolutions, Inc.**
Reference Number of the Deed of Trust:   **Instrument No. 20070301001246**
Parcel Number:   **070571057002**

I. NOTICE IS HEREBY GIVEN that on **October 1, 2021, 10:00 AM, at 4th Ave entrance King County Administration Building, located one block east of the Courthouse, 500 4th Ave, Seattle, WA**, MTC Financial Inc. dba Trustee Corps, the undersigned Trustee, will sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks,  at the time of sale the following described real property, situated in the County of King, State of Washington, to-wit:

**LOT(S) 57, BELMONT WOODS DIVISION II, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 172 OF PLATS, PAGE(S) 77 THROUGH 85, RECORDS OF KING COUNTY, WASHINGTON. SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.**

APN: **070571057002**

More commonly known as **23829 SE 248TH STREET, MAPLE VALLEY, WA 98038**

which is subject to that certain Deed of Trust dated February 27, 2007, executed by ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as designated nominee for LIBERTY FINANCIAL GROUP, INC, A WASHINGTON CORPORATION, Beneficiary of the security instrument, its successors and assigns, recorded March 1, 2007 as Instrument No. 20070301001246 and the beneficial interest was assigned to Real Time Resolutions, Inc. and recorded May 12, 2020 as Instrument Number 20200512000681 of official records in the Office of the Recorder of King County, Washington.

II. No action commenced by **Real Time Resolutions, Inc.**, the current Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrowers' or Grantors' default on the obligation secured by the Deed of Trust/Mortgage.



**III.** The default(s) for which this foreclosure is made is/are as follows: FAILURE TO PAY WHEN DUE THE FOLLOWING AMOUNTS WHICH ARE NOW IN ARREARS:

### DELINQUENT PAYMENT INFORMATION

| From | To | Number of Payments | Monthly Payment | Total |
|------|-----|------|------|------|
| June 1, 2009 | May 25, 2021 | 144 | $834.13 | $120,114.72 |

### LATE CHARGE INFORMATION

| | | | | |
|------|-----|------|------|------|
| June 1, 2009 | May 25, 2021 | | | $4,749.81 |

### PROMISSORY NOTE INFORMATION

| | |
|------|------|
| Note Dated: | **February 27, 2007** |
| Note Amount: | **$79,600.00** |
| Interest Paid To: | **May 1, 2009** |
| Next Due Date: | **June 1, 2009** |

Current Beneficiary: **Real Time Resolutions, Inc.**
Contact Phone No: **877-252-3761**
Address: **PO Box 36655, Dallas, TX 75235-9833**

**IV.** The sum owing on the obligation secured by the Deed of Trust is: The principal sum of $78,389.94, together with interest as provided in the Note or other instrument secured, and such other costs and fees as are due under the Note or other instrument secured, and as are provided by statute.

**V.** The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on **October 1, 2021**. The defaults referred to in Paragraph III must be cured by **September 20, 2021**, (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before **September 20, 2021** (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustees' fees and costs are paid. Payment must be in cash or with cashiers' or certified checks from a State or federally chartered bank. The sale may be terminated any time after the **September 20, 2021** (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the entire principal and interest secured by the Deed of Trust, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

**VI.** A written Notice of Default was transmitted by the current Beneficiary, Real Time Resolutions, Inc. or Trustee to the Borrower and Grantor at the following address(es):

ADDRESS
ALBERTO RIVERA MONROY
23829 SE 248TH STREET, MAPLE VALLEY, WA 98038

IRMA PARRA-RIVERA
23829 SE 248TH STREET, MAPLE VALLEY, WA 98038

by both first class and certified mail on **April 21, 2021**, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served with said written Notice of Default or the written Notice of Default was posted in a conspicuous place **April 20, 2021** on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

**VII.** The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

**VIII.** The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

**IX.** Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustees' Sale.

**X. Notice to Occupants or Tenants.** The purchaser at the Trustee's sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

Notice to Borrower(s) who received a letter under RCW 61.24.031:

### THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.

You have only 20 DAYS from the recording date on this notice to pursue mediation.

**DO NOT DELAY.   CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might eligible and it may help you save your home.  See below for safe sources of help.

### SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Telephone: (877) 894-4663 or (800) 606-4819    Website: www.wshfc.org

The United States Department of Housing and Urban Development: Telephone: (800) 569-4287 Website: www.hud.gov



The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: (800) 606-4819   Website: www.homeownership.wa.gov

Dated: ___5/25/2021___

MTC Financial Inc. dba Trustee Corps, as Duly Appointed Successor Trustee

By: Alan Burton, Vice President

MTC Financial Inc. dba Trustee Corps
606 W. Gowe Street
Kent, WA 98032-5744
Toll Free Number: (844) 367-8456
TDD: (800) 833-6388

**For Reinstatement/Pay Off Quotes, contact MTC Financial Inc. DBA Trustee Corps**

STATE OF WASHINGTON
COUNTY OF KING

I certify that I know or have satisfactory evidence that ALAN BURTON is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the **Vice President for MTC Financial Inc. DBA Trustee Corps** to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _____

_____
Notary Public in and for the State of Washington

Residing at King County

My Appointment expires _____

KATHRINE MAGNI
Notary Public
State of Washington
Commission # 20104335
My Comm. Expires Feb 3, 2024

Trustee Corps may be considered a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

Re: TS#: WA08000298-19-1

# RESIDENT OF PROPERTY
# SUBJECT TO FORECLOSURE SALE

The foreclosure process has begun on this property, which may affect your right to continue to live in this property.

Ninety days or more after the date of this notice, this property may be sold at foreclosure.

If you are renting this property, the new property owner may either give you a new rental agreement or provide you with a sixty-day notice to vacate the property.

You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights that you may have.

TS No WA08000298-19-1                                    TO No 191299809-WA-MSI



TS No WA08000298-19-1                 APN 070571057002                 TO No 191299809-WA-MSI

## NOTICE OF FORECLOSURE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 RCW

To:   **ALBERTO RIVERA MONROY AND IRMA PARRA-RIVERA, HUSBAND AND WIFE**

Pursuant to the Revised Code of Washington, the attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to Real Time Resolutions, Inc., the Beneficiary of your Deed of Trust and holder of the obligation secured thereby.  Unless the default(s) is/are cured, your property will be sold at auction on October 1, 2021.

To cure the default(s), you must bring the payments current, cure any other defaults, and pay accrued late charges and other costs, advances, and attorney fees as set forth below by September 20, 2021 (11 days before the sale date).  To date, delinquent payments from June 1, 2009, arrears and costs are as follows:

| PAYMENT INFORMATION AS OF: | May 25, 2021 | September 20, 2021 |
|---|---|---|
| Payments | $120,114.72 | $123,451.24 |
| Late Charges | $4,749.81 | $4,749.81 |
| **TOTALS** | **$124,864.53** | **$128,201.05** |

| BENEFICIARY'S ADVANCES, COSTS, AND EXPENSES DUE TO REINSTATE AS OF: | May 25, 2021 | September 20, 2021 |
|---|---|---|
| **TOTALS** | **$196.48** | **$196.48** |

| FORECLOSURE FEES AND COSTS DUE TO REINSTATE AS OF (Estimated Itemization): | May 25, 2021 | September 20, 2021 |
|---|---|---|
| Trustee's Fee | $1,350.00 | $1,350.00 |
| Trustee's Sale Guarantee | $613.26 | $613.26 |
| Recording Fees | $18.00 | $93.00 |
| Posting Notice of Default | $90.00 | $90.00 |
| Certified Mailing of Notice of Default (estimated) | $17.46 | $17.46 |
| Publication of Notice of Sale (estimated) | $0.00 | $1,700.00 |
| Posting of Notice of Sale | $0.00 | $90.00 |
| Certified Mailing of Notice of Sale (estimated) | $0.00 | $50.00 |
| **TOTAL FEES & COSTS** | **$2,088.72** | **$4,003.72** |
| **TOTAL TO REINSTATE** | **$127,149.73** | **$132,401.25** |

To pay off the entire obligation secured by your Deed of Trust as of May 31, 2021 you must pay a total of $78,389.94 in principal, $116,048.70 in interest, plus other costs and advances, estimated to date in the amount of $201,348.19.  From and after the date of this notice you must submit a written request to the Trustee to obtain the total amount to pay off the entire obligation secured by your Deed of Trust as of the payoff date.

As to the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust, you must cure each such default.  Listed below are the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust.  Opposite each such listed default is a brief description of the action

TS No WA08000298-19-1                APN 070571057002                TO No 191299809-WA-MSI

necessary to cure the default and a description of the documentation necessary to show that the default has been cured.

Description of Action Required to Cure and Documentation Necessary to Show Cure:
**$0.00** Property Tax – if paid, a copy of the paid tax receipt should be included with the reinstatement funds
**$0.00** Insurance Advance – if paid, a copy of the paid receipt should be included with the reinstatement funds

You may reinstate your Deed of Trust and the obligation secured thereby at any time up to and including the **September 20, 2021** (11 days before the sale date), by paying the amount set forth or estimated above and by curing any other defaults described above. Of course, as time passes other payments may become due, and any further payments coming due and any additional late charges must be added to your reinstating payment. Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement. In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate or to pay off the entire indebtedness may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the Trustee before the time you tender reinstatement or the payoff amount so that you may be advised of the exact amount you will be required to pay. Tender of payment, in the form of cash, or cashiers' check or certified checks from State or federally chartered banks, or performance must be made to:

**MTC Financial Inc. dba Trustee Corps**
**TS No. WA08000298-19-1**
**606 W. Gowe Street**
**Kent, WA 98032-5744**
**Toll Free Number: (844) 367-8456**
**TDD: (800) 833-6388**

AFTER **September 20, 2021**, YOU MAY NOT REINSTATE YOUR DEED OF TRUST BY PAYING THE BACK PAYMENTS AND COSTS AND FEES AND CURING THE OTHER DEFAULTS AS OUTLINED ABOVE. The Trustee will respond to any written request for current payoff or reinstatement amounts within ten days of receipt of your written request. In such a case, you will only be able to stop the sale by paying, before the sale, the total principal balance of **$78,389.94** plus accrued interest, costs and advances, if any, made pursuant to the terms of the documents and by curing the other defaults as outlined above.

You may contest this default by initiating court action in the Superior Court of the county in which the sale is to be held. In such action, you may raise any legitimate defenses you have to this default. A copy of your Deed of Trust and documents evidencing the obligation secured thereby are enclosed. You may wish to consult a lawyer. Legal action on your part may prevent or restrain the sale, but only if you persuade the court of the merits of your defense. You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.

The court may grant a restraining order or injunction to restrain a Trustee's Sale pursuant to RCW 61.24.130 upon five days notice to the Trustee of the time when, place where and the judge before whom the application for the restraining order or injunction is to be made. This notice shall include copies of all pleadings and related documents to be given to the judge. Notice and other process may be served upon the Trustee at:

MTC Financial Inc. dba Trustee Corps
TS No. WA08000298-19-1
606 W. Gowe Street
Kent, WA 98032-5744



TS No WA08000298-19-1                    APN 070571057002                    TO No 191299809-WA-MSI

Toll Free Number: (844) 367-8456
TDD: (800) 833-6388

If you do not reinstate the secured obligation and your Deed of Trust in the manner set forth above, or if you do not succeed in restraining the sale by court action, your property will be sold.  The effect of such sale will be to deprive you and all those who hold by, through or under you of all interest in the property;

Dated:  _5/25/2021_                    **MTC Financial Inc. dba Trustee Corps**

By: Alan Burton, Vice President

Trustee Corps may be considered a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.