1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALBERTO RIVERA MONROY and IRMA
PARRA-RIVERA, husband and wife,

                              Plaintiffs,

        v.

REAL TIME RESOLUTIONS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., and
MTC FINANCIAL, dba TRUSTEE CORPS,

                              Defendants.

No.  2:21-cv-00813-BJR

ORDER GRANTING DEFENDANT
TRUSTEE CORPS' MOTION FOR
SUMMARY JUDGMENT

## I.    **INTRODUCTION**

Plaintiffs Alberto Rivera Monroy and Irma Parra-Rivera ("Plaintiffs") brought this lawsuit against Defendants Real Time Resolutions, Inc. ("RTR"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and MTC Financial d/b/a Trustee Corps ("Trustee Corps"), asserting various claims arising from the initiation of nonjudicial foreclosure proceedings on Plaintiffs' home.  Presently before the Court is Defendant Trustee Corps' motion for summary judgment ("Motion" or "Mot.," Dkt. 52) on Plaintiffs' claims against it.  Plaintiffs oppose the Motion. Having reviewed the Motion, the record of the case, and the relevant legal authorities, the Court GRANTS Trustee Corps' motion for summary judgment.  The reasoning for the Court's decision follows.

ORDER - 1

## II.   <u>BACKGROUND</u>

### A.   Factual Background

In February 2007, Plaintiffs were extended two mortgage loans, each of which were secured by a deed of trust to Plaintiffs' residential property (the "Property").[1]  This lawsuit centers on the second of those loans.  That loan was memorialized by a note (the "Note") having a principal amount of $79,600, and requiring monthly installment payments of $834.13 from April 2007 to March 2022.  *See* Complaint ("Compl.," Dkt. 1), Ex. I at 66-70.  The deed of trust securing that loan (the "Deed of Trust") was recorded with the King County Recorder Office under the recording number, 20070301001246.  *See id.*, Ex. A.

### 1.   Plaintiffs' Payments and Loan Modification Request

Plaintiffs consistently made their scheduled installments payments until May 2009.  Declaration of Michael DeLeo ("DeLeo Decl.," Dkt. 53), Ex. 3.  At that point, they stopped making payments for over one year.  *Id.*, Ex. 3, Ex. 4 at 6, Ex. 5 at 5-6.  RTR, meanwhile, began servicing the Note in December 2009.[2]  In a letter to RTR dated June 16, 2010, Mr. Rivera requested a modification of the loan.  *Id.*, Ex. 6.  He explained:

> The motive of this letter is to inform you of the reason why I – Alberto Rivera – have not been able to pay my house loan.  The reason is that there wasn't as much work as there was before and as a result of that, it affected my monthly income.  I would like this opportunity to apologize for any inconvenience that my delays to answer your letters may have caused.  The reason for my delay was because of my first loan that needed my complete attention in order to receive a modification like the one I am asking from Real Time Resolution.

*Id.*, Ex. 6 at 3.

---

[1] The loans were originally extended and serviced by third parties that no longer own or service them.

[2] Evidence in the record indicates that RTR eventually purchased the loan in 2018.  *See* Declaration of Samuel Trakhtenbroit ("Trakhtenbroit Decl.," Dkt. 50) ¶ 17, Ex. 8.  Plaintiffs dispute this fact, but in all events, it is irrelevant to the Court's resolution of the present motion for reasons set forth below.

Contemporaneous notes kept by Mr. Rivera reflect that, in August 2010, he had a phone conversation with an RTR representative, who told Mr. Rivera that they "can work on a three month trial payment of $417.07." DeLeo Decl., Ex. 9 at 3, Ex. 10 at 1. Thereafter, beginning in September 2010, Plaintiffs made five monthly payments of $417.07 through January 2011. *Id.*, Ex. 5, Ex. 11. On January 28, 2011, RTR sent Plaintiffs a proposed Modification Agreement reducing the Note's interest rate and monthly payment, however that agreement was never executed. *Id.*, Ex. 12. Plaintiffs have made no further payments on the Note since January 2011. *Id.*, Ex. 5. RTR, over the next decade, contacted Plaintiffs through various means – including letters, phones calls, and periodic balance statements – about their outstanding loan balance. *Id.*, Exs. 15-16; Trakhtenbroit Decl. ¶¶ 10-12, Exs. 3-5.

## 2. The 2009 Reconveyance and Plaintiffs' Discovery of It

Central to Plaintiffs' claims is a deed of reconveyance[3] that was recorded in King County on June 3, 2009 (the "2009 Reconveyance"). Compl., Ex. B. The 2009 Reconveyance, in describing the deed of trust being reconveyed, references the recording number, 20070301001246, which is associated with the Deed of Trust on the Property. However, it also references a borrower, lender, original trustee, successor trustee, loan number, servicer file number, and deed of trust date that bear no relation to the Deed of Trust and the loan at issue in this case. *Id.*

Brian Ernissee, a representative of Nationwide Title Clearing ("Nationwide") – the successor trustee identified in the 2009 Reconveyance – submits an affidavit explaining the discrepancy. *See* Declaration of Garrett Garfield ("Garfield Decl.," Dkt. 51), Ex. 6 ("Ernissee Aff."). He states that Nationwide had prepared and recorded the 2009 Reconveyance for a client

---

[3] A deed of reconveyance, which is issued when a mortgage debt is fully paid or otherwise discharged, provides notice that a deed of trust has been reconveyed back to the borrower and the lien on the secured property has been extinguished. *See* 19A West's Legal Forms, Real Estate Transactions, Residential § 41:1.

ORDER - 3

unrelated to this case. *Id.* ¶ 5.  According to Ernissee, the document "contains a scrivener's error in one regard – there is a typographical error for one digit in the [recording number], where a '7' was erroneously substituted for an intended '4.'" *Id.* ¶ 6.  In other words, Nationwide intended the 2009 Reconveyance to reconvey a separate deed of trust having the recording number, 20040301001246, but due to a typo, it inadvertently referenced the Deed of Trust's recording number, 20070301001246.[4]

Plaintiffs concede that they first discovered the 2009 Reconveyance in 2015.  They state, in an interrogatory response, that they hired an attorney in early May 2015 to prepare a quit deed claim on the Property.  DeLeo Decl., Ex. 4 at 7.  In the process of reviewing title records to do so, they "learned the second mortgage no longer existed as of June 3, 2009." *Id.*

### 3.    The Initiation of Foreclosure Proceedings

In November 2019, RTR referred Plaintiffs' account to Trustee Corps for purposes of foreclosing on the Property.  Barraza Decl., Ex. 1 at 25.  The next month, in December 2019, Trustee Corps received from a title insurance company a Trustee's Sale Guarantee indicating, based on a title report, that the Property was encumbered by the Deed of Trust.  Declaration of Alan Burton ("Burton Decl.," Dkt. 54)., Ex. 4.  Trustee Corps also received from RTR a Declaration of Ownership stating that RTR was "the holder of the [Note]" secured by the Deed of Trust. *Id.*, Ex. 3.

In May 2020, RTR sent Plaintiffs a letter advising them of certain rights and options they had to avoid foreclosure of the Property.  DeLeo Decl., Ex. 17.  In response, on June 9, 2020,

---

[4] Ernissee states that, after being alerted to the error, Nationwide recorded a corrected deed of reconveyance in January 2022.  Ernissee Aff. ¶ 8.  However, Plaintiffs submit printouts from a parcel search they ran on the King County Recorder Office website on August 15, 2022 indicating that, as of that date, the 2009 Reconveyance was still linked to the Deed of Trust.  Declaration of Vicente Barraza ("Barraza Decl.," Dkt. 73), Ex. 3.

Plaintiffs sent RTR a Notice of Error letter, stating that Plaintiffs "do not owe this debt because the records of the Recorder of King County, Washington confirm you re-conveyed the deed of trust on June 3, 2009." Compl., Ex. H. RTR thereafter sent Plaintiffs a response letter stating that it did not have any record that the loan had been satisfied, and that the loan remained outstanding. *Id.*, Ex. I. RTR also forwarded this letter correspondence to Trustee Corps. Barraza Decl., Ex. 1 at 10, 14.

Trustee Corps was formally appointed as successor trustee under the Deed of Trust in February 2021. Burton Decl., Ex. 2. Trustee Corps subsequently sent Plaintiffs, in April 2021, a Notice of Default. Compl., Ex. D. It then obtained, in May 2021, a Publication Endorsement from a title agency stating that the assurances contained in the December 2019 Trustee's Sale Guarantee remained current. Burton Decl., Ex. 5. One week later, Trustee Corps sent to Plaintiffs a Notice of Trustee Sale, which notified Plaintiffs that Trustee Corps would sell the house on October 1, 2021 at a public auction. *Id.*, Ex. 7.

B.     **Procedural History**

Plaintiffs filed this lawsuit on June 16, 2021, asserting various claims against Trustee Corps, RTR, and MERS arising from the nonjudicial foreclosure proceedings that Trustee Corps had commenced. Plaintiffs, specifically, assert claims against Trustee Corps for: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (Compl. ¶¶ 30-32); (2) violation of the Washington Deed of Trust Act ("DTA"), RCW § 61.24 (Compl. ¶¶ 39-40); (4) declaratory relief (*id*. ¶¶ 41-45); (5) violation of the Washington Consumer Protection Act ("CPA"), RCW § 19.86 (Compl. ¶¶ 52-55); (6) negligent misrepresentation (*id*. ¶¶ 65-67); and (7) negligence (*id*. ¶¶ 74-75). Plaintiffs seek, in addition to money damages, a declaration that the

ORDER - 5

2009 Reconveyance extinguished the mortgage lien at issue, and injunctive relief enjoining the foreclosure sale of the Property.

On September 17, 2021, the Court granted Plaintiffs' motion for a preliminary injunction, temporarily enjoining the foreclosure of Plaintiffs' Property.  Dkt. 31.[5]  The Court found that the injunction was warranted based, in part, on Plaintiffs' allegations that they had not made any payments on the Note since the 2009 Reconveyance was recorded, and that RTR had made no attempt to collect on the debt over the next 11 years.  *Id.* at 3, 5-6.  The order explained that those facts, if true, would present sufficiently unusual circumstances calling into question the equity and legality of the planned foreclosure.  *Id.* at 6.  On March 24, 2022, the Court granted in part a motion to dismiss that had been filed by MERS, dismissing Plaintiffs' claims against it other than those for violation of the CPA, negligent misrepresentation, and negligence.  Dkt. 39.[6]  Similar to the Court's order entering the preliminary injunction, the Court permitted those latter claims to proceed in light of Plaintiffs' allegations that they had made no mortgage payments since June 2009 in reliance upon the 2009 Reconveyance.  *Id.* at 9, 12, 13.

On July 27, 2022, Trustee Corps filed this Motion, seeking summary judgment on all of Plaintiffs' claims against it.[7]  Plaintiffs filed an opposition to the Motion ("Opp.," Dkt. 72), and Trustee Corps replied (Dkt. 77).

---

[5] While RTR opposed Plaintiffs' motion, Trustee Corps took no position on the matter.  Dkts. 26-27.

[6] The order on MERS's motion to dismiss did not result in the dismissal of any claims asserted against Trustee Corps.

[7] RTR also filed a motion for summary judgment (Dkt. 49), however the Court struck that motion on October 18, 2022 (Dkt. 81) in light of an order the Court had issued compelling RTR to provide certain discovery that Plaintiffs sought for purposes of responding to the motion (Dkt. 80).

ORDER - 6

### III.   <u>STANDARD OF REVIEW</u>

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) (citations and quotation marks omitted).

### IV.   <u>DISCUSSION</u>

#### A.   Whether the 2009 Reconveyance Reconveyed the Deed of Trust and Extinguished the Lien on the Property

Plaintiffs' claims are, to varying degrees, premised on their assertion that the 2009 Reconveyance reconveyed the Deed of Trust and extinguished the mortgage lien on the Property. Plaintiffs contend that this occurred due to the 2009 Reconveyance's reference to the Deed of Trust's recording number and the fact that the Recorder Office indicates that the two documents are linked. Trustee Corps, on the other hand, contends that the 2009 Reconveyance did not extinguish Plaintiffs' mortgage lien given the reconveyance's reference to a host of other information identifying an unrelated deed of trust, and various extrinsic evidence demonstrating that the parties never intended to release the lien.

ORDER - 7

Courts in Washington apply the principles of contract interpretation when interpreting deeds. *See, e.g.*, *Edmonson v. Popchoi*, 155 Wash. App. 376, 386 (Wn. Ct. App. 2010), *aff'd*, 172 Wash. 2d 272 (Wn. Sup. Ct. 2011).  As such, they "rely on general contract law principles to interpret provisions in a deed of trust." *Somarakis, Tr. of John Somarakis Tr. v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT*, 21 Wash. App. 2d 1008 (Wn. Ct. App. 2022).  The parties point to no case (and this Court is not aware of any) addressing whether courts also rely on contract law principles to interpret, specifically, a deed of reconveyance.  The Court, nevertheless, will do so in interpreting the 2009 Reconveyance given that it is a deed, and serves the same function (albeit with an inverse effect) as a deed of trust: that is, providing notice that an interest in real estate has been conveyed.  *See* RCW § 64.04.010 ("Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed.").

The task of a court in interpreting a written contract is "to determine the intent of the parties."  *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wash. 2d 565, 569 (Wn. Sup. Ct. 1996); *see also Zunino v. Rajewski*, 140 Wash. App. 215, 222 (Wn. Ct. App. 2007) ("deeds are construed to give effect to the intentions of the parties, and particular attention is given to the intent of the grantor when discerning the meaning of the entire document"), *overruled on other grounds*, *Hanna v. Margitan*, 193 Wash. App. 596 (Wn. Ct. App. 2016).  The 2009 Reconveyance, on its face, indicates no intent to reconvey the Deed of Trust and extinguish the lien on the Property.  Critically, the document was signed by Nationwide as the successor trustee, references Meagan Evans as the borrower, and identifies Neighborhood Mortgage Inc. as the deed of trust's beneficiary.  Plaintiffs do not dispute that they are not Meagan Evans, and that those entities hold no stake in Plaintiffs' Deed of Trust.  Moreover, the 2009 Reconveyance contains various other

ORDER - 8

information identifying the reconveyed deed of trust that is equally unrelated to Plaintiffs' Deed of Trust: the loan number, servicer file number, deed of trust date, and original trustor. *Id.* In light of all this other information, which is inconsistent with this being a reconveyance of Plaintiffs' Deed of Trust, the fact that the 2009 Reconveyance references the Deed of Trust's recording number is plainly insufficient even to create an ambiguity as to whether the parties intended to extinguish the lien on the Property. The document's contents make clear that it was intended to reconvey a different deed of trust and extinguish a different lien. Therefore, the Court finds as a matter of law, without any need to resort to extrinsic evidence, that the 2009 Reconveyance was not intended to – and did not – reconvey the Deed of Trust and thereby extinguish the lien on the Property. *See Kelley v. Tonda*, 198 Wash. App. 303, 312-13 (Wn. Ct. App. 2017) (interpretation of a contract is a matter of law when "the interpretation does not depend on the use of extrinsic evidence").

Even if the Court needed to resort to extrinsic evidence, such evidence overwhelmingly demonstrates that the 2009 Reconveyance was not intended to release Plaintiffs' mortgage lien. Under the "context rule" adopted by the Washington Supreme Court, courts may consider, for purposes of ascertaining the parties' intent, "the circumstances surrounding the making of the contract," "the subsequent conduct of the parties to the contract," and "the course of dealing between the parties," among other things. *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 129 Wash. App. 303, 311 (Wn. Ct. App. 2005). Here, it is uncontested that the document had been filed by Nationwide for an unrelated client.

Moreover, Plaintiffs now admit that they did not learn about the 2009 Reconveyance until 2015, roughly six years after the document was recorded. While they assert that they nonetheless believed they had been excused from making mortgage payments since 2009 – having "been in

ORDER - 9

doubt the entire time they were dealing with RTR," and having heard from others that their mortgage liens were voluntarily released (*see* Opp. at 16-17) – their behavior is inconsistent with that assertion.  Plaintiffs do not dispute that, after the 2009 Reconveyance was recorded, they kept making payments on the loan and attempted to modify it.  Mr. Rivera's correspondence with RTR, including his June 2010 letter requesting the loan modification, reflect that Plaintiffs stopped making the required payments only because they faced reduced income. *See supra* at 2-3.  Further, it is now undisputed that RTR, for its part, spent a decade after the 2009 Reconveyance attempting to collect on the loan.  In short, Plaintiffs and RTR continued to act as if the loan remained unsatisfied and the lien remained in place.

Therefore, based on the uncontroverted evidence of Nationwide's and the parties' conduct, the only reasonable inference is that the 2009 Reconveyance was not intended to extinguish the lien on the Property.  Accordingly, even resorting to extrinsic evidence, the Court still finds as a matter of law that the 2009 Reconveyance did not reconvey Plaintiffs' Deed of Trust. *See Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wash. App. 488, 495-96 (Wn. Ct. App. 2000) ("When extrinsic evidence is used to interpret a contract, summary judgment is appropriate if only one reasonable inference can be drawn from the extrinsic evidence.").

Plaintiffs argue that, regardless of the document's contents and the parties' intent, the mortgage lien must be deemed extinguished because the 2009 Reconveyance "remains in the public records as being linked to Plaintiffs' [] deed of trust" and it "has not been rescinded or removed." Opp. at 14.  Plaintiffs, here, are referring to the fact that, as of August 2022, the King County Recorder Office website still linked the 2009 Reconveyance to Plaintiffs' Deed of Trust through its recording number. *See* Barraza Decl., Ex. 3; *supra* at n.4.  However, that website's identification of a link between the 2009 Reconveyance and the Deed of Trust is irrelevant insofar

as the former did not, as a matter of law, reconvey the latter.  Any indication from the Recorder Office that the Deed of Trust was reconveyed by the 2009 Reconveyance would result from the clerical error made by Nationwide.

Lastly, the Court rejects Plaintiffs' arguments on the ground that it seeks an unjust outcome.  Effectively, Plaintiffs seek to exploit a third party's scrivener's error as a means of avoiding their debt obligations.  In *U.S. Bank National Association v. Oliverio*, 109 Wash. App. 68 (Wn. Ct. App. 2001), a borrower facing foreclosure similarly claimed that a clerical mistake made by their mortgage lender, which resulted in the inadvertent recording of a deed of reconveyance, extinguished the property lien despite the borrower's failure to make its required loan payments.  *Id.* at 1104-05.  The court, noting the "inequitable windfall" the borrower sought to reap, and reasoning that "the law will not relieve a party of an obligation due to another's mistake," rejected the borrower's claim and reinstated the security interest.  *See id.* at 1105-06. Other states' highest courts have similarly reinstated deeds of trusts, and the mortgage liens they created, where they had been inadvertently released by way of lenders' clerical errors.  *See, e.g.*, *Reeves v. US Bank Nat'l Ass'n on Behalf of Holders of Asset Backed Sec. Corp. Home Equity Loan Tr., Series NC2005-HE8, Asset Backed Pass-Through Certificates, Sheies NC2005-HE8*, 387 Mont. 138, 143 (Mt. Sup. Ct. 2017); *Los Alamos Credit Union v. Bowling*, 108 N.M. 113, 114 (N.M. Sup. Ct. 1989).  As in those cases, the Court finds that it would be inequitable to permit Plaintiffs to evade the mortgage lien in spite of their failure to make their required payments under the Note.  This is particularly so given that the scrivener's error at issue in this case was done by the hand of an unrelated party.

ORDER - 11

**B.     Plaintiffs' Claims Against Trustee Corps**

Having found that the 2009 Reconveyance did not reconvey the Deed of Trust and extinguish the mortgage lien on the Property, the Court will review each of Plaintiffs' claims against Trustee Corps.

**1.     Claim for Violation of the Washington Deed of Trust Act**

Plaintiffs claim that Trustee Corps violated two separate provisions of the Deed of Trust Act, which "governs the procedure for non-judicial foreclosures." *Tavares v. Alabama Hous. Fin. Auth.*, No. 17-cv-1599, 2017 WL 5668057, at *3 (W.D. Wash. Nov. 27, 2017).  Specifically, Plaintiffs allege that Trustee Corps violated (1) RCW § 61.24.010(4), which imparts on trustees "a duty of good faith" to the borrower; and (2) RCW § 61.24.030(7), which requires trustees, before issuing a notice of sale, to "have proof that the beneficiary is the holder of any promissory note or other obligation secured by the deed of trust."  *See* Compl. ¶¶ 37-40.  The Washington Supreme Court, however, has held that "the DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions where no foreclosure sale has been completed." *Frias v. Asset Foreclosure Servs., Inc*., 181 Wash. 2d 412, 417 (Wn. Sup. Ct. 2014).  Here, no foreclosure sale of the Property has taken place.  Plaintiffs therefore cannot maintain their claim for damages under the DTA, and the Court, accordingly, will grant summary judgment to Trustee Corps on that claim.

**2.     Claim for Violation of the Washington Consumer Protection Act**

Plaintiffs assert a claim under the Consumer Protection Act, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW § 19.86.020.  Plaintiffs premise their claim on Trustees Corps' alleged violations of the two DTA provisions upon which its DTA claim is based.  *See* Compl. ¶¶ 46-55.

ORDER - 12

While Plaintiffs cannot prevail on a DTA claim absent a completed foreclosure sale, "under appropriate factual circumstances, DTA violations may be actionable under the CPA, even where no foreclosure sale has been completed." *Frias*, 181 Wash. 2d at 417; *see Lyons v. U.S. Bank Nat. Ass'n*, 181 Wash. 2d 775, 784 (Wn. Sup. Ct. 2014) ("Without the sale of the property, damages are not recoverable under the DTA, but a CPA claim may be maintained regardless of the status of the property"). Therefore, the Court will review whether Plaintiffs present sufficient evidence of a DTA violation as necessary to provide a basis for a CPA claim.

### a.    Whether Trustee Corps Violated RCW § 61.24.010(4)

As noted above, Plaintiffs allege that Trustee Corps violated the duty of good faith prescribed by RCW § 61.24.010(4). That duty is integral to the DTA's "three party system for mortgages where an independent trustee acts as the impartial party between a lender and a borrower instead of the court." *Lyons*, 181 Wash. 2d at 786. Under that system, "a trustee is not merely an agent for the lender or the lender's successors," but instead holds "obligations to all of the parties to the deed, including the homeowner." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wash. 2d 83, 93 (Wn. Sup. Ct. 2012). In order to comply with the duty of good faith, a trustee "must 'adequately inform' itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a 'cursory investigation.'" *Lyons*, 181 Wash. 2d at 787 (quoting *Walker v. Quality Loan Serv. Corp.*, 176 Wash. App. 294, 309-10 (Wn. Ct. App. 2013)). While a trustee "does not need to summarily accept a borrower's side of the story," it "must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith." *Id.*

Plaintiffs contend that Trustee Corps violated its duty of good faith by failing to investigate adequately the 2009 Reconveyance. *See* Opp. at 5-6, 9-10. They assert, specifically, that their June 2020 Notice of Error letter, which stated their position that the Deed of Trust had been

reconveyed in 2009, put Trustee Corps on notice of a "significant title issue meriting personal review and action." *Id*. at 9-10. The Court disagrees, and finds that no reasonable juror could conclude that Trustee Corps was required to investigate more than it did, and that failure to do so constitutes bad faith.

Plaintiffs do not dispute that they failed to make their required loan payments, and never satisfied the Note or otherwise discharged the underlying debt. Under those circumstances, Plaintiffs' explanation that the Deed of Trust had already been reconveyed would make little sense. More importantly, Plaintiffs' explanation was directly contradicted by two different reports received by Trustee Corps. The first is the December 2019 Trustee's Sale Guarantee, which indicated that there remained a lien on the Property created by the Deed of Trust. *See* Burton Decl., Ex. 4. Contemporaneous email communications reflect that Trustee Corps interpreted that guarantee as indicating that there were no obstacles to commencing foreclosure proceedings. *See* Barraza Decl., Ex. 1 at 23. The second is the May 2021 Publication Endorsement that provided an assurance that the Trustee's Sale Guarantee remained current. *See* Burton Decl., Ex. 5. Both of those reports indicated that the Property remained encumbered by the Deed of Trust well after the 2009 reconveyance asserted in Plaintiffs' letter. *See* Burton Decl., Exs. 4-5.[8] Moreover, Trustee Corps specifically requested RTR's response to Plaintiffs' Notice of Error, which not only explained RTR's position that the Deed of Trust remained valid, but also advised Plaintiffs to forward any documentation indicating otherwise. *See* Compl., Ex. I. Plaintiffs neither did so nor contacted Trustee Corps to explain their position on the matter. *See* Burton Decl. ¶ 10.

---

[8] Plaintiffs assert that those reports were unreliable in light of a separate title report Plaintiffs obtained in June 2020 that did not indicate a lien associated with the Deed of Trust. *See* Barraza Decl., Ex. 5. However, absent any indication that Trustee Corps received that report, it could not have raised concerns with the reports Trustee Corps did receive or otherwise prompted further investigation.

ORDER - 14

In spite of all this, Plaintiffs argue that Trustee Corps should not have relied upon the reports it received, but instead should have independently investigated the issue by itself reviewing records maintained by the Recorder Officer. *See, e.g.*, Opp. at 9.[9]  What Plaintiffs demand is not what the law required of Trustee Corps.  As noted above, "[a] trustee does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands." *Lyons*, 181 Wash. 2d at 787.  Trustee Corps was only required to "'adequately inform' itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a 'cursory investigation.'" *Id.* The Court finds that, under the circumstances presented in the record, no reasonable juror could conclude that Trustee Corps' retrieval and review of two separate reports on the Property and Deed of Trust was too inadequate of an investigation into a potential reconveyance issue to satisfy its duty of good faith.  Indeed, the steps Trustee Corps took to inform itself about Plaintiffs' loan account and the lien on the Property were ultimately sufficient for it to conclude, correctly, that the Deed of Trust had not been reconveyed.  Accordingly, Plaintiffs cannot establish a violation of RCW § 61.24.010(4).

### b.    Whether Trustee Corps Violated RCW § 61.24.030(7)

Plaintiffs also claim that Trustee Corps violated RCW § 61.24.030(7) by failing to verify that RTR was the "holder" of the Note before issuing the notice of sale.  *See* Opp. at 10-13.  As noted above, RCW § 61.24.030(7) requires that, "before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the holder of any promissory note … secured by the deed of trust."  RCW § 61.24.030(7)(a).  That statute also

---

[9] Plaintiffs suggest that the DTA – specifically, RCW § 61.24.040 – requires trustees to "personally review the County recorders index," and prohibits them from relying upon vendors to conduct that review.  Opp. at 5-6, 9.  The Court, however, perceives nothing in that statute requiring a trustee to personally review records maintained by a county recorder, and Plaintiffs point to no authority prohibiting or discouraging trustees from relying on vendors to do so.  In all events, even if Trustee Corps had reviewed those records, they would have revealed, at most, a scrivener's error and not a reconveyance of Plaintiffs' Deed of Trust.

ORDER - 15

provides that, unless the trustee has violated his duty of good faith imparted by RCW § 61.24.010(4), "the trustee is entitled to rely on the beneficiary's declaration as evidence of proof" that the beneficiary is the note holder.  RCW § 61.24.030(7)(b).  Given that Plaintiffs do not establish that Trustee Corps violated its duty of good faith (*see supra* at 13-15), Trustee Corps was statutorily authorized to rely on RTR's Declaration of Ownership as proof that RTR was the Note's holder.  *See Pelzel v. Nationstar Mortg., LLC*, 186 Wash. App. 1034 (Wn. Ct. App. 2015) ("the declaration of a beneficiary's agent stating the beneficiary is the note's holder is sufficient proof that the beneficiary is the note's holder, unless the trustee has violated its duty of good faith in some other way").

Nonetheless, Plaintiffs contend that there were two problems with RTR's declaration that made it unworthy of reliance.  *See* Opp. at 10-13.  First, Plaintiffs point out that, while the declaration states that RTR "is the holder of the [Note]," the document is titled, "Declaration of Ownership."  *See* Burton Decl., Ex. 3.  According to Plaintiffs, this "internal conflict" renders the declaration defective.  The Court disagrees.  Washington law is clear that a trustee may rely on a declaration as long as "the declaration unambiguously states the beneficiary is the actual holder." *Brown v. Washington State Dep't of Com.*, 184 Wash. 2d 509, 542 (Wn. Sup. Ct. 2015).  RTR's Declaration of Ownership contains precisely that statement: "Real Time Resolutions, Inc. is the holder of the Promissory Note."  *See* Burton Decl., Ex. 3.  That the document's title refers to ownership does not call into question RTR's unambiguous statement that it is the Note's holder.[10]

---

[10] In arguing that the Declaration of Ownership is ambiguous as to whether RTR was the Note's holder, Plaintiff relies on *Lyons*, wherein the Washington Supreme Court found that a declaration's statement – that the beneficiary was "the actual holder of the promissory note … *or* has requisite authority" to enforce it – was ambiguous as to holder status. *Lyons*, 181 Wash. 2d at 780, 791.  That is not the case here, where RTR's declaration stated only that RTR was "the holder of the [Note]."  Indeed, in a later decision, *Brown*, the court found that a declaration – which, like RTR's declaration, simply stated that the beneficiary was "the actual holder of the promissory note" – did "not suffer from the ambiguity at issue in *Lyons*" because it did not contain such an "or" provision.  *Brown*, 184 Wash. 2d at 542.

ORDER - 16

Second, Plaintiffs point to the declaration's statement that "[t]he Note has not been assigned or transferred to any other person or entity" (*see* Burton Decl., Ex. 3), contending that it is "facially incorrect."  Opp. at 11.  Plaintiffs assert that the statement is undermined by evidence that the Note had previously been sold several times.  *See id*. at 11-12.  This is a red herring.  As an initial matter, the statement is not necessarily incorrect.  Contrary to Plaintiffs' attempt to recast it, the declaration does not state that the Note has *never* been assigned or transferred.  Given that the purpose of the declaration was to provide an assurance that RTR was then the current holder of the Note, a perfectly reasonable interpretation is that the statement was conveying that the Note had not been assigned or transferred *since* RTR became the holder.  More importantly, the accuracy of a statement about the Note's ownership has no bearing on Trustee Corps' entitlement to rely RTR's declaration insofar as Trustee Corps was relying on it only as "proof that the beneficiary is the holder of [the] promissory note."  RCW §§ 61.24.030(7)(a)-(b).  Indeed, under the DTA, ownership of a note is irrelevant to a beneficiary's ability to foreclose on it.  *See Beck v. U.S. Bank Nat'l Ass'n*, No. 17-cv-0882, 2017 WL 6389330, at *4 (W.D. Wash. Dec. 14, 2017) ("the power to initiate foreclosure lies with the holder of the promissory note "regardless of any assignment of the deed of trust" (citation and quotation marks omitted)); *Deutsche Bank Nat. Tr. Co. v. Slotke*, 192 Wash. App. 166, 173 (Wn. Ct. App. 2016) ("it is the holder of a note who is entitled to enforce it"); *see also* RCW § 61.24.005(2) (defining "beneficiary" to mean "the holder of the instrument or document evidencing the obligations secured by the deed of trust").[11]  Therefore, the Court finds, based on the undisputed facts presented, that Trustee Corps did not violate that provision.

---

[11] Plaintiffs also point to the deposition testimony of the declaration's signatory, Wesley Owens, as casting doubt on both whether RTR was Note's owner and whether it was the Note's holder.  Plaintiffs cite, specifically, Owens' testimony that he lacked knowledge about the circumstances surrounding the Note's prior sale transactions and that he had never seen the original version of the Note.  *See* Opp. at 11.  Even if these issues did cast doubt on RTR's

ORDER - 17

### c.   Whether Plaintiffs Demonstrate Causation

Trustee Corps contends that Plaintiffs cannot prevail on their CPA claim for a separate reason: Plaintiffs cannot establish that any alleged DTA violation caused their alleged injuries.  To prevail on a CPA claim, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37 (Wn. Sup. Ct. 2009).  The fifth element "requires that a causal link be established between the unfair or deceptive act complained of and the injury suffered."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (Wn. Sup. Ct. 1986).  As such, "[p]laintiffs may only recover for injuries that they demonstrate were proximately caused by a defendant's unfair or deceptive practices."  *Meyer v. U.S. Bank Nat. Ass'n*, 530 B.R. 767, 781 (W.D. Wash. 2015), *aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc.*, 712 F. App'x 619 (9th Cir. 2017).

Even if Trustee Corps had violated the DTA as alleged, Plaintiffs would not be able to establish that their alleged injuries – *e.g.*, "costs to resist the nonjudicial foreclosure" (Compl. ¶ 55) – were proximately caused by such violations.  With respect to Trustee Corps' alleged violation of its duty of good faith, it is inconceivable that Trustee Corps' performance of the type of investigation demanded by Plaintiffs would have prevented the initiation of foreclosure proceedings.  As discussed above, the 2009 Reconveyance did not reconvey the Deed of Trust or otherwise affect RTR's foreclosure rights.  Thus, even if Trustee Corps had discovered the 2009 Reconveyance, RTR and Trustee Corps would have had every right to disregard it and pursue foreclosure.   Plaintiffs therefore cannot show that Trustee Corps' violation of RCW §

---

holder status – they do not (*see infra* at 20-22) – they are irrelevant to Trustee Corps' entitlement to rely on RTR's declaration insofar as Plaintiffs present no evidence that Trustee Corps was aware of those issues.

ORDER - 18

61.24.010(4), even if established, proximately caused their injuries.  *See Bhatti v. Guild Mortg. Co.*, 550 F. App'x 514, 515 (9th Cir. 2013) (plaintiff could not satisfy causation prong of CPA claim because the allegedly wrongful foreclosure "was not caused by a violation of the DTA"); *Patrick v. Wells Fargo Bank, N.A.*, 196 Wash. App. 1009 (Wn. Ct. App. 2016) (granting summary judgment to defendant on CPA claim because plaintiffs presented insufficient evidence that its claimed injury – the trustee's sale of their home – was caused by the alleged DTA violations).

Plaintiffs similarly cannot demonstrate that any violation of RCW § 61.24.030(7) by Trustee Corps – *i.e.*, through its alleged failure to verify that RTR was the "holder" of the Note – proximately caused their injuries.  To establish causation, Plaintiffs would logically need to demonstrate that RTR was not, in fact, the Note's holder.  *See Blair v. Nw. Tr. Servs., Inc.*, 193 Wash. App. 18, 37-38 (Wn. Ct. App. 2016) (plaintiff could not establish that RCW § 61.24.030(7) violation caused his injuries absent proof that beneficiary was not the note holder).  However, as discussed further below, Plaintiffs fail to do so.  *See infra* at 20-21.  Accordingly, Plaintiffs cannot establish that a violation of RCW § 61.24.030(7) proximately caused their injuries.

Therefore, Plaintiffs cannot prevail on a CPA claim for two independent reasons: they present insufficient evidence demonstrating an underlying DTA violation, and they cannot establish the element of causation.  Accordingly, the Court will grant summary judgment to Trustee Corps on Plaintiffs' CPA claim.

### 3.    Claim for Negligent Representation

Plaintiffs' claim for negligent misrepresentation is premised on their allegations that Trustee Corps misrepresented, in the foreclosure documents they sent to Plaintiffs (*e.g.*, the Notice of Default), that the Deed of Trust remained enforceable and permitted RTR's foreclosure on the Note.  Compl. ¶ 66.  According to Plaintiffs, those representations were false for two reasons.

ORDER - 19

First, the 2009 Reconveyance reconveyed the Deed of Trust and thereby extinguished the mortgage lien.  Second, RTR had no right of foreclosure in "[t]he absence of credible proof that RTR either owns or holds the original note."  *See* Opp. at 18-21.

"A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages."  *Ross v. Kirner*, 162 Wash. 2d 493, 499 (Wn. Sup. Ct. 2007).  "In the context of alleged negligent misrepresentation based on information provided in nonjudicial foreclosure forms, the threshold concern is whether the forms contained false or misleading information."  *Blair*, 193 Wash. App. at 39.

Trustee Corps contends that Plaintiffs fail to establish several elements of a negligent misrepresent claim, but focuses on the threshold issue of whether the forms Trustee Corps sent to Plaintiffs contained misrepresentations.  *See* Mot. at 19-20.  The Court finds that they did not. With respect to the 2009 Reconveyance, the Court has already found that it did not reconvey the Deed of Trust or otherwise extinguish the mortgage lien.  Therefore, Plaintiffs cannot establish that Trustee Corps misrepresented the validity of the Deed of Trust, and RTR's right to foreclose, on that basis.

Plaintiffs' assertion as to the "absence of credible proof that RTR either owns or holds the original note" also does not disprove Trustee Corps' representations.  As an initial matter, given that "it is the *holder* of a note who is entitled to enforce" a deed of trust, *see Slotke*, 192 Wash.

ORDER - 20

App. at 173 (emphasis added), whether or not RTR was the Note's *owner* has no bearing on the accuracy of Trustee Corps' statements about RTR's right of foreclosure.  Plaintiffs do not present evidence sufficient to create a genuine issue as to whether RTR was the Note's holder.  At most, Plaintiffs point to Owens' deposition testimony that he had not seen the original version of Note.  *See* Owens Dep. Tr. at 14:25-15:4.  However, Owens also testified that, after seeing a copy of the Note, he had personally confirmed with RTR's file room (located at RTR's offices in Dallas, Texas) that it possessed the original version.  *See id.* at 12:1-15; 14:8-24, 37:10-15.  That testimony is consistent with the declaration of RTR's corporate counsel, Samuel Trakhtenbroit, that RTR has been "in physical possession of the Note in its secured records room in its office in Dallas, Texas" since January 2010.  *See* Trakhtenbroit Decl. ¶ 8.

Owens' deposition testimony and Trakhtenbroit's declaration make clear enough that RTR was in physical possession of the Note and, therefore, held holder status.  *See* RCW § 62A.1-201(21)(A) (UCC defining "holder" to include the "person in possession of a negotiable instrument").  In all events, Plaintiffs' conclusory assertion as to the "absence of credible proof" of RTR's holder status is insufficient to disprove it.  *See Blair*, 193 Wash. App. at 33 (conclusory allegation that beneficiary was not the note holder was insufficient to survive summary judgment on claim that trustee negligently misrepresented beneficiary's right of foreclosure); *see also Williams v. Columbia Debt Recovery, LLC*, 579 F. Supp. 3d 1203, 1208 (W.D. Wash. 2022) ("the nonmoving party must make a 'sufficient showing on an essential element of her case with respect to which she has the burden of proof' to survive summary judgment" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Plaintiffs do not present sufficient evidence creating a genuine issue as to whether Trustee Corps misrepresented RTR's right of foreclosure on the basis that it was not the Note's holder.

ORDER - 21

Accordingly, Plaintiffs fail to demonstrate that Trustee Corps made a misrepresentation in the foreclosure documents it sent to Plaintiffs.  The Court, accordingly, will grant summary judgment to Trustee Corps on Plaintiffs' negligent misrepresentation claim.

### 4.     Claim for Negligence

"To prevail on a negligence claim, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Turner v. Washington State Dep't of Soc. & Health Servs*., 493 P.3d 117, 124 (Wn. Sup. Ct. 2021) (citation and quotation marks omitted).  Plaintiffs assert a negligence claim against Trustee Corps premised on its alleged failure to investigate and discover the 2009 Reconveyance. Compl. ¶¶ 74-75.  According to Plaintiffs, the duty that Trustee Corps held, but violated, is the duty of good faith prescribed by the DTA under RCW § 61.24.010(4).  *See* Pl. Mot. at 21-22.  The Court has already found, as discussed above, that no reasonable juror could conclude that Trustee Corps violated its duty of good faith.  *See supra* at 13-15.  The Court also found that, even if Trustee Corps did violate that duty, Plaintiffs cannot establish that such violation proximately caused their alleged injury. *See supra* at 18-19.  Accordingly, Plaintiffs cannot establish the second and fourth elements of a negligence claim.  The Court therefore will grant summary judgment to Trustee Corps on Plaintiffs' claim for negligence.

### 5.     Claim for Violation of the Fair Debt Collection Practices Act

Plaintiffs claim that Trustee Corps, by initiating foreclosure proceedings on the Property, violated Sections 1692f(6)(A) and 1692f(6)(B) of the FDCPA.  Those provisions together prohibit "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; [or] (B) there is no present intention to take possession of the

property." 15 U.S.C. §§ 1692f(6)(A)-(B). Plaintiffs claim, specifically, that Trustee Corps'

initiation of foreclosure proceedings violated these FDCPA provisions because no entity (other

than Plaintiffs) had a right of possession over the Property by virtue of the 2009 Reconveyance.

*See* Compl. ¶ 31. As discussed above, however, the 2009 Reconveyance did not extinguish the

mortgage lien or otherwise interfere with RTR's right to take possession of the Property.

Accordingly, Trustee Corps did not violate the FDCPA by initiating foreclosure proceedings. The

Court therefore grants summary judgment to Trustee Corps on this claim.

**6.    Claim for Declaratory Relief**

Finally, Plaintiffs' claim for declaratory relief seeks an order enjoining Trustee Corps from

pursuing the nonjudicial foreclosure of the Property "at the behest of defendants RTR and MERS."

*See* Compl. ¶¶ 44-45. Their claim, like many others asserted, is premised on their allegation that

the 2009 Reconveyance "extinguished the security interest in the [] Deed of Trust." *Id.* ¶ 44. The

2009 Reconveyance, however, did not extinguish that security interest. Therefore, Plaintiffs are

not entitled to a declaration restraining Trustee Corps from advancing the foreclosure proceedings.

Accordingly, the Court grants summary judgment to Trustee Corps on this claim.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Trustee Corps' motion for summary

judgment (Dkt. 52). The Court dismisses, with prejudice, all of Plaintiffs' claims against Trustee

Corps. Trustee Corps is hereby dismissed as a defendant from this lawsuit.

SO ORDERED.

Dated: November 10, 2022

_Barbara J Rothstein_
_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 23